### ROSWURM et al. v. SINCLAIR PRAIRIE OIL CO. et al.

#### No. 14625.

Court of Civil Appeals of Texas.
Fort Worth.

May 19, 1944.

Rehearing Denied July 7, 1944.

737

Ray Winder, of Gainesville, S. Earl Wright, of Los Angeles, Cal., and A. H. Britain, of Wichita Falls, for appellants.

Edward H. Chandler, of Tulsa, Okl., Paul A. McDermott, of Fort Worth, W. H. Sanford and Conan Cantwell, both of Dallas, Cecil Murphy and W. D. Garnett, both of Gainesville, and C. H. Rosenstein, of Tulsa, Okl., for appellees.

SPEER, Justice.

Anna J. Roswurm, joined by her husband and ten other persons, all alleged to be the collateral kin of Alice E. Crow, deceased, instituted this suit against Sinclair Prairie Oil Company, five other corporations and

19 individuals to recover (first count) 3/128ths royalty interest in 337.6 acres of land in Cooke County, Texas, fully described by. metes and bounds in the petition. In the alternative (second count) recovery was sought of a 3/128ths undivided mineral interest in said land. In addition to the asserted interest in the land, allegations are made that defendants had taken large quantities of oil from the land and they prayed judgment for the value of their proportionate part thereof.

Three individual defendants disclaimed and were discharged with their costs. All other defendants answered with general denials, not guilty, and alleged, at great length, the manner and means by which Alice E. Crow and her husband parted with their title to the land.

The contesting defendants alleged that the land in which the interest is claimed by plaintiffs was the community property of Alice E. Crow and husband W. H. Crow; that they sold and conveyed all of same except a reserved and excepted 3/64ths mineral right and interest during the lifetime of Alice E. Crow, and that after her death W. H. Crow, for a valuable consideration paid to him in 1938 sold and conveyed all of that reserved and excepted interest to John McLemore, who was an innocent purchaser for value, and that certain of the defendants claim title under the said John McLemore.

Plaintiffs countered with supplemental pleadings to the effect that the land was acquired by Alice E. Crow as her separate property in 1911; that she died intestate in 1926, left no children nor their descendants, and that her surviving husband, W. H. Crow, as such, inherited from her only one-half of the 3/64ths interest in the land.

Plaintiffs further plead actual and constructive notice to John McLemore of the separate property rights of Alice E. Crow in the land, and that the nature and character of the conveyance from W. H. Crow to John McLemore in 1938 constituted it only a quitclaim deed and such as would not support the defense of innocent purchaser, as pleaded by defendants.

The court instructed a jury verdict against plaintiffs and in favor of defendants. From this judgment, plaintiffs have appealed. We shall continue to refer to the parties as they were designated in the trial court.

Plaintiffs present nine points of error upon which they rely for a reversal of the judgment entered. These points are lengthy and are involved with asserted factual matters and arguments. We have studied them with much care, and if we properly understand the matters presented, they may be grouped as follows: (1) A tract of 530½ acres of land, of which the land in controversy is a part, was acquired by Alice E. Crow in 1911, while she resided in the State of Oklahoma, paid for out of her separate property; that there was no community property law in that State at the time, and the tract of Texas land so acquired became the separate property of Alice E. Crow; (2) that said Alice E. Crow died intestate in 1926, leaving no child or children nor the descendants of such child or children, that she left surviving her W. H. Crow, her husband, and that plaintiffs in this case are collateral kin and entitled to inherit one-half of the real estate owned in her separate right, at her death; (3) that at the death of Alice E. Crow, she owned as her separate property an undivided 3/64ths mineral or royalty interest in the 337.6 acres of land described in plaintiffs' petition; and (4) that John McLemore, under whom certain defendants claim title, had, when he purchased from W. H. Crow, actual and constructive notice that the interest in the land purported to be conveyed was the separate property of Alice E. Crow; that the imputed knowledge to him of the property laws of Oklahoma, the nature and character of the various instruments in the chain of title and the nature, effect and wording of the conveyance from W. H. Crow to him, were sufficient to put him on notice and to preclude a claim by defendants that he was an innocent purchaser.

As we view this record there is no material conflict in the pertinent facts. Plaintiffs proved many of the matters just referred to and defendants introduced a conveyance by W. H. Crow to John McLemore, under which certain of them claim. That instrument completes the chain of title but does not conflict in any way with those previously shown in the evidence.

We have reached the conclusion that the peremptory, take-nothing charge was properly given. We shall presently attempt to demonstrate why we have so decided.

The facts reveal that W. H. Crow and Alice E. (Foster) Crow were married at Dallas, Texas, on October 29, 1907, but that they in fact both resided at that time

in "Pittsburg County, (then) Indian Territory".

Joseph H. Foster died in the early part of 1907. He was a brother of Alice E. Crow; by the terms of Foster's will, Alice E. Crow and another sister, now Anna J. Roswurm (one of the plaintiffs in this case), were bequeathed certain residence property in McAlester, Oklahoma (then Indian Territory). The sisters subsequently partitioned their holdings thus acquired.

In 1911, Gillock conveyed by warranty deed to Alice E. Crow, "of Pittsburg County, Oklahoma", 530½ acres of land situated in Cooke County, Texas, described by metes and bounds as being parts of the Toby and Ward Surveys. The consideration was $13,262.50, showing $8,962.50 paid in cash and the assumption by Alice E. Crow of the payment of $4,300 evidenced by a note and lien on the land, previously executed by Gillock to a named loan company. A vendor's lien was retained by grantor until the note and lien should be paid and discharged. There was parol testimony at the trial showing that the cash consideration recited in the deed was in fact paid by a conveyance from Alice E. Crow and husband to Gillock of the McAlester, Oklahoma, separate property of Alice E. Crow, taken by her under the will of her brother.

On June 9, 1915, W. H. and Alice E. Crow borrowed from Margaret M. Duncan $1,700, for which they executed their joint note and gave a deed of trust lien on the Texas land to secure its payment.

In 1916 the Crows moved from Oklahoma to Dallas, Texas, where they resided for three years, and moved from Dallas to Denver, Colorado.

On September 12, 1917, by general warranty deed, W. H. and Alice E. Crow conveyed the Texas land to Francis Crow (shown by parol testimony to be the father of W. H. Crow). Consideration shown was $18,000. Recitation was made that $13,700 was paid in cash and receipted for by grantors, and the assumption of payment by grantee of $4,300 payable to the loan company. No vendor's lien was retained in the deed.

On January 21, 1918, Margaret M. Duncan released the deed of trust lien on the Texas land and acknowledged receipt of payment of the $1,700 note secured thereby.

On May 7, 1918, Francis Crow and wife, by general warranty deed, conveyed the land to W. H. Crow and wife, Alice E. Crow, for a one dollar consideration, and further recites, "at her consideration, namely, the failure of Francis Crow paying the consideration in deed from Alice E. Crow, joined by her husband W. H. Crow." Nothing is said about the outstanding indebtedness held by the loan company, and no vendor's lien retained. There was parol evidence that there was no consideration in fact paid by Francis Crow in the original conveyance to him, but that it was for the purpose of removing a possible controversy between W. H. Crow and a previous wife.

By general warranty deed, dated July 1, 1918, W. H. Crow and wife, Alice E. Crow, recited to be of Dallas County, Texas, conveyed the Texas land to Lucrum Petroleum Company, a corporation, for a recited consideration of $10,000 paid by grantee, "and stock at the consideration and the assumption of Texas Land and Mortgage Co., in the amount of $4300.00." No vendor's lien was retained in the deed.

The entire tract was reconveyed by Lucrum Petroleum Company to Alice E. Crow and W. H. Crow, by a general warranty deed containing this language: "For and in consideration of the sum of ($6300.-00) Six Thousand three hundred and 00/100 dollars to it (grantor) paid and secured to be paid by Alice E. Crow and W. H. Crow as follows: The assumption of a first lien note of $4300.00 and a second lien note for $2000.00 now outstanding against the following described land:" A vendor's lien was retained in the deed until the described notes were paid. There was parol testimony offered by plaintiffs at the trial that no cash or other consideration was actually paid by Lucrum Petroleum Company when it purchased the land from the Crows, but that the land was intended to and did constitute the entire assets and capital stock of the corporation; that an attorney for the Crows procured the reconveyance of the land because the purposes of the corporation had failed; that the incorporators were John White, W. H. Crow and R. R. Fair; that the capital stock was $10,000 owned as follows: W. H. Crow, $2,250; Mrs. Alice E. Crow, $2,500; R. R. Fair, $250; and John White, $5,000. No mention is made in the deed of conveyance nor in the parol evidence as to what, if any, disposition was made of the outstanding capital stock. No explanation is found in the chain of title as to who, if any person, ever thereafter paid the $2,000 second

lien note against the property assumed by W. H. and Alice E. Crow. When the Crows later conveyed the land no assumption of its payment is shown.

On May 30, 1919, W. H. Crow and wife, Alice E. Crow, by general warranty deed conveyed the 530½ acres of Texas land "for and in consideration of One Dollar and other good and valuable consideration" to Albin E. Johnson. Following the description of the land, this exception and reservation is made: "Except 1/2 of all the oil, gas, mineral rights, of whatsoever character found or produced from said property; it being agreed and understood that the grantors are to retain an undivided one-half interest in and to all oil, gas or other mineral rights to said property." There is a vendor's lien clause in this deed, but nothing is said in the instrument about outstanding indebtednesses.

On February 16, 1925, W. H. Crow and wife, Alice E. Crow, executed their "mineral deed" to W. B. Tucker and J. O. Fox, in consideration of $1,500 recited to be paid in cash, for an undivided one-half interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the lands situated in Cooke County, Texas, being 530½ acres out of the Toby and Ward Surveys, fully described in the grantors' deed to Johnson, shown in a given book and page of the deed records of Cooke County, Texas. (The deed to which reference is made was that last above pointed out by us.) The mineral deed contains this provision: "It is agreed and understood that a three-sixty-fourths (3/64) of all oil, gas and other minerals produced from the above described property is retained by the said W. H. Crow and Alice E. Crow." The instrument warrants the title to the property conveyed as against all persons, "except as to those claiming through Albin E. Johnson, grantee of the surface."

Plaintiffs offered in evidence certified copies of the probate proceedings had in Denver County, Colorado, showing that Alice E. Crow had died intestate in that county and state on November 12, 1926. There was parol proof that she never had any children born to nor adopted by her and that W. H. Crow was her surviving husband. It appears that her estate was listed in those proceedings and the administration closed. (There was no listing of nor inventory of any interest in the Texas land.)

The foregoing is substantially all of the material evidence offered by plaintiffs.

Defendants offered in evidence an instrument upon which they relied as a conveyance of the 3/64ths royalty or mineral interest, to which plaintiffs claim they are entitled to one-half. We shall refer again to this instrument under the last group of points.

It is appropriate to pause here and make some observations of settled law applicable to the instant case.

■ In determining whether or not a peremptory instruction should have been given, as was done in this case, the appellate courts will view all testimony in its most favorable light to the losing party. City of Houston v. Chapman, Tex.Com. App., 123 S.W.2d 652. Conflicts in the testimony will be disregarded, and only that favorable to the losing party will be considered, and when so considered the appellate court will indulge every intendment reasonably deducible therefrom in favor of the party against whom the instructed verdict was had. Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935.

■ Where a wife, owning real estate, dies intestate, leaving surviving her the husband and no children or their descendants and no father or mother, the husband inherits one-half of the lands of the intestate, and the other half is inherited by the brothers and sisters and collateral kin. Section 2, Art. 2571, R.C.S.

"Upon the dissolution of the marriage relation by death, all property belonging to the community estate of the husband and wife shall go to the survivor, if there be no child or children of the deceased or their descendants * * *." Art. 2578, R. C.S.

"All property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent * * * shall be the separate property of the wife * * *." Art. 4614, R.C.S., Vernon's Ann.Civ.St. art. 4614.

"All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common

effects or gains, unless the contrary be satisfactorily proved * * *." Art. 4619 R.C.S., Vernon's Ann.Civ.St. art. 4619.

■■ Much of the able brief presented by plaintiffs is devoted to propositions and argument, well supported by authorities to the effect that the McAlester, Oklahoma, property bequeathed by her brother to Alice E. Crow was her separate property. That after the Crows were married and the McAlester property was exchanged for the Texas land in 1911, that land likewise became Mrs. Crow's separate property. That there were no community property laws in Oklahoma at that time and that the Crows were residents of that state. All these factual matters must be taken by us as true, in this case. However, it is not material in a determination of the nature of Mrs. Crow's title to the Texas land whether there was or was not a community property law in Oklahoma, nor indeed was it material where she resided. For the purposes of this suit, as between the husband and wife and all persons who knew or were charged with knowledge of the facts, the Texas land taken in exchange for Mrs. Crow's separate property became her separate property, at least to the extent of the proportionate part of the consideration paid out of her separate property. We say this because there was an assumption by Alice E. Crow of a debt and lien upon and against the land. The McAlester houses were unquestionably the separate property of Mrs. Crow. Change of form or mutation of that interest would render property standing in its stead nonetheless her separate property so long as it could be definitely traced. 23 Tex.Jur., Sect. 66, p. 89.

■ Under the rules of law hereinabove announced, we must, in this case, accept as true the testimony of plaintiffs that Alice E. Crow died intestate in 1926, leaving no child or children or their descendants and no adopted children; that W. H. Crow is her surviving husband and that plaintiffs are her collateral kin, inheriting from her as asserted by them. However, we are not to be understood as approving plaintiffs' contention that the recitations in the deed from Gillock to Alice E. Crow, "of the county of Pittsburg and State of Oklahoma", nor the recitation in the deed from W. H. Crow to John McLemore, "of the County of Tulsa and State of Oklahoma", furnished any proof of the real residences of the named parties. The respective quoted words are merely descriptive phrases added to the names of the grantees as a means of identification. Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 136 S.W.2d 207.

The foregoing discussion of groups one and two of plaintiffs' assignments of error only become material to a disposition of this case provided John McLemore, under whom certain defendants claim, was not an innocent purchaser for value. This question is involved in the third and fourth groups of assigned errors.

■■ As we view this record, there is no testimony which imputes to McLemore notice of the separate property rights acquired by Alice E. Crow in the 530½ acres of land when it was purchased from Gillock in 1911. Naturally he was charged with constructive notice of everything contained in the chain of title, including Mrs. Crow's deed from Gillock and all subsequent conveyances prior to the time he purchased the fractional interest attempted to be conveyed by the surviving husband, W. H. Crow. We have seen no other evidence in the record tending to show McLemore knew anything more than what the conveyances recited. If it could be said that McLemore was shown to be a resident of Oklahoma (which, as we have indicated, was not shown) and chargeable with knowledge that there was no community property law in that state, this would not avail plaintiffs anything, for the reason, the land being situated in Texas, the laws of this State will control the nature of the property rights acquired by nonresident persons. 23 Tex.Jur. 146, Sect. 117. The rule is followed in Hammonds v. Commissioner of Internal Revenue, 10 Cir., 106 F.2d 420.

If notice of the separate character of Mrs. Crow's property rights in the land can be traced to McLemore, it must be found in the chain of title, as to all of which he is charged with having had notice. He is not shown to have had knowledge of any facts developed at the trial by the parol evidence.

■ It is the universally settled law of this State, under Article 4619 R.C.S., Vernon's Ann.Civ.St. Art. 4619, that all property acquired during the marital relation shall be deemed the community property of both. Perhaps this broad statement should be modified to the extent that such presumption would not prevail if the con-

veyance, under which title was acquired contained language evincing the intention that it should be the separate property of one or the other of the spouses.

In the instant case, purchasers, such as McLemore, had access to the record of the chain of title, and we must view it as McLemore was required to do.

 We may assume that he saw the conveyance from Gillock to Alice E. Crow in 1911, reciting that over $9,000 in cash had been paid and a $4,300 note assumed. There was nothing to indicate that the cash consideration was paid out of grantee's separate funds, nor in fact that it was not paid in cash but by an exchange of her separate lands. A purchaser who has no independent knowledge of a fact will only be charged with notice of what the deed contains. Cooke v. Bremond, 27 Tex. 457, 86 Am.Dec. 626. He also saw in the chain of title that in 1915, W. H. and Alice E. Crow borrowed $1,700, both signing the note and deed of trust on the land; that the debt was paid, by whom he could not know, but was released in 1918. One instrument in the chain of title showed the Crows had conveyed the land to Francis Crow in 1917 for a recited cash consideration of $13,700 cash paid and the assumption of the debt against it. They retained a vendor's lien until the note was paid. That in 1918, Francis Crow and wife reconveyed the land to both W. H. and Alice E. Crow, apparently because grantor had not performed the consideration of the deed to him. There appeared in the title a conveyance by W. H. and Alice E. Crow to Lucrum Petroleum Company in 1918, reciting a cash consideration of $10,000 cash paid and the assumption of the $4,300 lien debt. There also appeared a conveyance by Lucrum Petroleum Company to W. H. and Alice E. Crow, reciting a consideration of $6,300, by the assumption of two outstanding notes and liens, in the sums of $4,300 and $2,000, respectively. There were no conditions or provisions of any kind in either of the deeds to W. H. and Alice E. Crow to indicate a limitation of title to either of the grantees. Nor was there anything in the Lucrum Petroleum Company deed to indicate that it was conveyed to satisfy any previous consideration or obligation due by grantor to grantees. On the face of these two deeds it was apparent that the Crows had parted with the title and acquired it back by a separate and distinct purchase. It was obvious to a

purchaser that the Crows were really acquiring this title by a good faith purchase. If the deed had been made to either of the spouses, without limitation to the contrary, it would have been deemed community property, but being made to both, should have satisfied the most skeptical buyer that it was community, absent actual knowledge to the contrary. A buyer under such conditions was authorized to deal with it as community property. Cooke v. Bremond, supra. It is contended by plaintiffs that because the Texas land was the separate property of Alice E. Crow, when it was acquired in 1911, the subsequent transactions did not change its ownership, because of its "acquisition" at that time. Without the parol testimony developed upon the trial, which facts were not known to McLemore, we think he was justified in the belief that the "acquisition" of this title dated from the purchase by them from Lucrum Petroleum Company, by which instrument it was apparently and presumptively community.

 The burden of proof was upon plaintiffs in this case, where they sought to recover against those holding under McLemore to show that he had notice of their rights or that he had notice of facts sufficient to put him upon inquiry, and that such inquiry, if pursued with reasonable diligence, would have disclosed the rights claimed by them. Marshburn v. Stewart, 113 Tex. 507, 254 S.W. 942; Myers v. Crenshaw, Tex.Civ.App., 116 S.W.2d 1125, 1130, affirmed 134 Tex. 500, 137 S.W.2d 7.

 Under the facts shown, there is nothing in the record to indicate that the property was other than community, insofar as an innocent purchaser is concerned. Even if, as between W. H. Crow and his wife, Alice E. Crow, the Texas land was her separate property, the record gave to McLemore every evidence that it was community. Under these conditions, absent homestead rights (a thing not in this case), the husband would have the right to sell the community property to an innocent purchaser and pass the title as against claims of the wife. Parker v. Coop, 60 Tex. 111, 114. The same principle applies when a sale is made by the surviving husband after the wife's death, as against those claiming as her collateral kin. French v. Strumberg, 52 Tex. 92; Patty v. Middleton, 82 Tex. 586, 17 S.W. 909;

Sanburn v. Schuler, Sup., 23 S.W. 641; Mayor v. Breeding, Tex.Civ.App., 24 S.W.~ 2d 542, 546, error refused; 43 Tex.Jur. 614, sect. 361, et seq.

By the fourth group of points of error as designated by us, it is contended by plaintiffs that since the Crows had conveyed away all of their interests in the 530½ acres of land except an undivided 3/64ths royalty or mineral right therein, at the death of Alice E. Crow, in 1926, she owned in her own right that interest and under the circumstances her surviving husband inherited from her one-half thereof, or an undivided 3/128ths interest in the royalty or mineral rights, and that plaintiffs inherited the remaining 3/128ths interest. That although W. H. Crow did execute a pretended conveyance of some interest to John McLemore in 1928, the instrument was no more than a quitclaim deed and would not support defendants' claim that McLemore was an innocent purchaser.

If, as a matter of fact, the land here in controversy was community property, it evidently was inherited by W. H. Crow from his deceased wife, and he became the sole owner, and if it could be said the instrument by which he attempted to convey it was only a quitclaim deed, the title passed to the purchaser as completely as it would have under a warranty deed. Harrison Oil Co. v. Sherman, Tex.Civ.App., 66 S.W.2d 701, error refused.

The instrument under which the defendants in this case claim to own the reserved and excepted 3/64ths undivided royalty or mineral interest was designated in the record as a "Warranty Deed", dated February 23, 1938, from W. H. Crow, "Widower", to John McLemore, reciting a consideration of Ten Dollars paid by grantee and receipt acknowledged. The granting clause reads: "Have granted, sold and conveyed and by these presents do grant, sell and convey unto the said John McLemore, of the County of Tulsa and State of Oklahoma, all that certain tract or parcel of land, described as follows, to-wit:" The description calls for two tracts, one of which is recited to contain 337.6 acres and the other 173 acres (aggregating 510.6 acres). As best we can tell from the lengthy field notes, they purport to describe the 530½ acres originally conveyed by Gillock to Alice E. Crow. The first tract mentioned as 337.6 acres is described substantially as in plaintiffs' petition, for which they seek to recover the fractional interest in this suit.

Following the description of the land in the above instrument this language appears: "It is the intent and shall be the effect of this deed, to convey to grantee, all the rights, interest and shares of the grantor in all the real estate included in the Thos. Toby Survey, Abstract No. 1054 and the T. W. Ward Survey, Abstract No. 1089." The habendum clause reads: "To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said John McLemore, his heirs and assigns forever." The above is followed by the general warranty of the premises unto the grantee.

There was parol evidence offered showing that W. H. Crow in fact received $250 or $260 in cash paid as a consideration for the conveyance made by him to McLemore.

We come now to consider whether or not the conveyance from Crow to McLemore was a conveyance of title or a quitclaim of a possible or probable chance of interest. It is the settled rule that in determining the nature of a conveyance, the instrument as a whole will be considered, and if it purports to convey the property itself and not a chance or right of title, even though it contains some elements of a quitclaim it will be deemed a conveyance of the land. Barfield v. W. C. Belcher Land Mortgage Co., Tex.Com. App., 257 S.W. 1095.

The language of a conveyance will be construed most strongly against the grantor and in favor of the grantee, so as to convey the greatest estate which the language used can be construed to pass. Stevens v. Galveston H. & S. A. Ry. Co., Tex.Com.App., 212 S.W. 639; Hunt v. Evans, Tex.Civ.App., 233 S.W. 854, error refused; Merriman v. Blalack, 56 Tex.Civ. App. 594, 121 S.W. 552, error refused; Arden v. Boone, Tex.Civ.App., 187 S.W. 995, affirmed, Tex.Com.App., 221 S.W. 265; Texas Creosoting Co. v. Hartburg Lumber Co., Tex.Com.App., 12 S.W.2d 169.

In Greer v. Willis, Tex.Civ.App., 81 S.W. 1185, error refused, it was held under the facts of that case that a deed conveying all the right, title and interest in the claim that the grantor had or might have in certain lands and also warranted the title, was an absolute conveyance of the

land itself, and not a mere chance of right, title and interest in the land.

Although an instrument may contain such words as "alienate", "release" and "quitclaim", to a described tract of land, when read from its four corners, its purpose is shown to be for a conveyance of the land and not merely such interests or rights as grantor has, is a conveyance and not a mere quitclaim. Abernathy v. Stone, 81 Tex. 430, 16 S.W. 1102; Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 1095, 3 A.L.R. 940. In the last cited case the granting clause reads: "Have bargained, sold, released and forever quitclaimed, and by these presents do hereby bargain, sell, release and forever quitclaim" to the grantee "all my right, title and interest in and to" certain described land. Following the description, this expression of intention was added: "And it is my intention here now to convey to the said A. A. Neff all the real estate that I own in said town of Paducah in Cottle county, Texas, whether it is set out above or not." The habendum clause was in the usual form, followed by a special warranty.

In Nichols v. Schmittou, 107 Tex. 54, 174 S.W. 283, the court discussed a situation very similar to that before us: In that case a rather complicated situation arose between heirs, and it appeared difficult to tell just what interest each owned in described lands. The granting clause was in the usual and customary form. The land described was apparently the whole of the tract in which grantors had inherited and purchased interests. Following the description this language was used: "The intention of the parties hereto is to convey any and all right, title and interest they may have, either from purchase, gift, devise or inheritance in and to the above lands." It was held that the quoted expression of the intention of the parties did not limit the conveyance to merely such title as the grantors had, but it emphasized that their full interest in the land, from whatever source acquired, was granted.

Adverting to the instrument under consideration in this case, we must bear in mind that from the chain of title both W. H. Crow as grantor and John McLemore knew the Crows had previously sold all of the 530½ acres of land in Cooke County, except the reserved 3/64ths undivided interest in the mineral rights, that the land was conveyed by Lucrum Petroleum Company to both W. H. Crow and his wife, Alice E. Crow, and, as disclosed by the record, in fact or at least presumptively, was community property. Alice E. Crow was dead and left no will and left no children or their descendants, all of which facts were known to W. H. Crow; he was charged with knowledge that under such conditions he could sell the whole community estate in the land. In his conveyance he apparently tried to describe the whole 530½ acres. In such situation the conveyance of the greater would include the lesser interest held by him. The intention expressed in the conveyance discloses that the instrument should cover the whole of the 530½ acres, being parts of the Toby and Ward Surveys, although the instrument under consideration, if controlled alone by the description given, covered only 510.6 acres. To eliminate the quoted "intention clause" from the instrument, no one could successfully contend that it was a quitclaim. Then we may ask what effect the intention clause had when read in connection with the rest of the instrument? Such title as W. H. Crow had was in the whole 530½ acres, since a mineral right is a part of the realty; it is obvious that the expressed intention in the conveyance, as was said in the Nichols-Schmittou case, supra, did not limit the conveyance to merely such title as the grantor had in the 510.6 acres described, but it was to emphasize that grantor was conveying the title to all of the land he owned, or had an interest in, within the Toby and Ward Surveys in Cooke County, Texas. The same principle is adhered to by the Supreme Court in the Cook-Smith case, supra. There, as here, certain land was definitely described, and grantor expressed the intention to convey all real estate owned by him in Paducah, Cottle County, Texas, whether described in the deed or not. Such intention clauses tend to enlarge and not limit the estate conveyed.

From what we have said it is plain that we hold there is no merit in the points of error presented; that they are overruled and that the judgment of the trial court should be and is hereby affirmed.