In the Matter of the MARRIAGE OF Marcene Mabry YORK And Marshall Ray York.

No. 9203.

Court of Civil Appeals of Texas, Amarillo.

Feb. 25, 1981.

Gibson, Ochsner & Adkins, Marvin W. Jones, Amarillo, for appellant.

Miller & Miller, Dee Miller, Amarillo, for appellee.

DODSON, Justice.

In this divorce action, Marcene Mabry York is the appellant and Marshall Ray York is the appellee. After a bench trial, the court rendered judgment granting a divorce and dividing the estate of the parties. The two major items of property of the parties are the family residence and the business, York Tire Company, Inc. In the trial court, Mrs. York claimed the family residence as her separate property and estate and Mr. York claimed approximately 78% of the family business as his separate property and estate. In its findings of fact and conclusions of law the trial court concluded that the family residence was community property and that the business was ½ community property and that the remaining ½ was the separate property of Mr. York. In its judgment, the court granted the residence to Mrs. York and the business to Mr. York.

Appealing from the judgment, Mrs. York claims the evidence is legally and factually insufficient to support the trial court's conclusions that the residence was the community property of the parties and that the business was one-half community property and one-half the separate property of Mr. York. She further maintains that as a result of these allegedly erroneous determinations, the trial court abused its discretion in dividing the estate of the parties. Conversely, Mr. York claims that under the evidence the trial court properly classified the property in question and that the court did not abuse its discretion in dividing the estate of the parties. After reviewing the record under the applicable legal standards, we reverse the judgment and remand the action to the trial court.

In reversing and remanding the judgment we conclude: (1) that the evidence fails to conclusively establish that Mrs. York owned the residential property as her separate property; (2) that the trial court's conclusion that the residence was community property is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust; (3) that the evidence is legally insufficient to support the trial court's conclusion that the business property in question is owned ½ by the community estate and ½ by Mr. York as his separate property; and (4) that under the circumstances of this case the trial court abused its discretion in dividing the estate of the parties.

Certain constitutional provisions, statutory enactments, and settled principles of law govern our determination of the questions presented by this appeal. Article 16, section 15 of the Texas Constitution states, in pertinent part:

All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent shall be the separate property of the wife;

\* \* \* \* \* \*

provided that husband and wife, without prejudice to pre-existing creditors, may from time to time by written instrument as if the wife were a feme sole partition between themselves in severalty or into equal undivided interests all or any part of their existing community property, or exchange between themselves the community interest of one spouse in any property for the community interest of the other spouse in other community property, whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property of such spouse.

Texas Family Code section 5.01 (Vernon 1975) more clearly characterizes the relative separate and community interests of spouses, wherein it states:

(a) A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except for any recovery for loss of earning capacity during marriage.

(b) Community property consists of the property, other than separate property, acquired by either spouse during marriage.

 Section 5.02 of the Family Code further provides: "Property possessed by either spouse during or upon dissolution of marriage is *presumed* to be community property (emphasis added)." Real estate acquired in the name of the husband and wife also raises a presumption that the property is community. *Gonzalez v. Gonzalez*, 541 S.W.2d 865, 868 (Tex.Civ.App.—Waco 1976, no writ); *McCarthy v. Jesperson*, 527 S.W.2d 825, 827 (Tex.Civ.App.—El Paso 1975, no writ). The burden is on the party claiming separate ownership to "clearly trace the original separate property into the particular assets on hand during the marriage." *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex.1975).

 In her third point of error, Mrs. York maintains the judgment should be reversed because there is no evidence to support the trial court's conclusion that the residential property in question was the community property of the parties. Mrs. York, in essence, claims the residential property is her separate property and estate because such property was given to her by her parents. The evidence shows that Mr. and Mrs. York were married 20 December 1958. By a warranty deed dated 25 May 1961 and filed for record in the office of the county clerk, Potter County, Texas, on 29 May 1961, Mrs. York's parents, Glenn R. Mabry and wife, Bernice T. Mabry, conveyed the real property to "MARSHALL R. YORK and wife, MARCENE M. YORK." The consideration recited in the deed is "the sum of TEN AND NO/100 ($10.00) DOLLARS. [*sic*] AND OTHER GOOD AND

VALUABLE CONSIDERATION." The deed contains no recitations that the property was conveyed to Mrs. York as a gift or that such property was conveyed to Mrs. York as her sole separate property and estate.

We must presume that the residential property is community. Claiming the property as her separate property and estate, Mrs. York had the affirmative burden of establishing that the residential property was her separate property as prescribed by article 16, section 15 of the Texas Constitution and section 5.01(a) of the Texas Family Code. Thus, for Mrs. York to prevail in this court on her "no evidence" challenge, the evidence must conclusively establish that the residential property is her separate property and estate.

Glenn R. Mabry testified that he intended to give the real property to Mrs. York as her sole separate property and estate. However, at the time of the conveyance, the Yorks contemplated building a house on the property to serve as their primary residence. Further contemplating community indebtedness to pay for a part of the construction of the residence, Mr. York told Mrs. York that he would not go into debt for the home construction unless he owned the property with her.

In further support of Mrs. York's separate property claim on the residential property, Mr. Mabry attempted to trace the ownership of the lot to the corpus of a trust held by Mrs. Mabry as trustee for Marcene, prior to the marriage. The record shows that three lots were acquired by him in 1956 and deeded to "BERNICE T. MABRY, TRUSTEE." Mr. Mabry testified that one of those lots was put into "Marcene Mabry's trust," the terms of which are not in the record before us. The record also fails to reflect which of the three lots was placed in that trust. Mr. Mabry further testified that Marcene's lot was traded for the lot in question on 15 September 1960. The deed is in the record and it shows that the lot in question was deeded to Mr. and Mrs. Mabry with no mention in its recitals that the Mabrys took title as trustees for Marcene.

The subsequent deed of that lot to Mr. and Mrs. York recites that the conveyance was made by Mr. and Mrs. Mabry, and it also makes no mention that the grantors were trustees.

The evidence in support of Mrs. York's separate property claim as to the residential property creates no more than an issue for the trier of the facts. *See, e. g., Galvan v. Galvan*, 534 S.W.2d 398, 400 (Tex.Civ.App. —Austin 1976, writ dism'd); *Wohlenberg v. Wohlenberg*, 485 S.W.2d 342, 346 (Tex.Civ. App.—El Paso 1972, no writ); *Hampshire v. Hampshire*, 485 S.W.2d 314, 316 (Tex.Civ. App.—Fort Worth 1972, no writ). Accordingly, we conclude that Mrs. York failed to conclusively establish that she owned the residential property as her separate property and estate. Her third point is overruled.

 By her fourth point of error Mrs. York claims the trial court erred in determining that the residential property was community property because such finding is contrary to the great weight and preponderance of the evidence. In deciding this challenge, we must consider all of the evidence to ascertain if such finding is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973); *Parrish v. Hunt*, 160 Tex. 378, 331 S.W.2d 304, 305–06 (1960). Having done so, we overrule Mrs. York's fourth point.

By her sixth point, Mrs. York maintains there is no evidence to support the trial court's conclusion that York Tire Company, Inc. was owned by the community estate to the extent of 50% of its value and Mr. York as his separate property to the extent of 50% of its value. Conversely, Mr. York claims there is evidence to support the court's challenged finding.

 In deciding Mrs. York's legal sufficiency challenge, we must review the evidence and all reasonable inferences therefrom in a light most favorable to the court's conclusions and disregard any evidence contrary thereto. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). However, for evidence

to be of probative force it must serve to prove the asserted proposition and it must be more than a mere surmise or suspicion. *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059, 1063 (1898). By definition, a surmise is a thought or idea based on scanty evidence, a guess, conjecture or an inference on slight grounds. *Gray v. Baker & Taylor Drilling Co.*, 602 S.W.2d 64, 66 (Tex.Civ.App.— Amarillo 1980, writ ref'd n.r.e.). Furthermore, as stated earlier, all property on hand upon the dissolution of the marriage is presumed to be community property, Tex.Fam. Code section 5.02 (Vernon 1975), and the burden is on the one claiming separate ownership to "clearly trace" the separate property into the assets on hand at the dissolution of such marriage. *Cockerham v. Cockerham*, 527 S.W.2d at 167.

The evidence shows that in 1963 or 1964, Mr. York and his brother, Tommy York, acquired and began operating York Tire Company as a partnership. The purchase price was $12,000. The partnership was owned ½ by Mr. and Mrs. York and ½ by Tommy York. In January of 1971, Mr. and Mrs. York owned as community property the undivided ½ interest in York Tire Company and an undivided ⅓ interest in a company known as Air Speed Oil Company of Lubbock. On 2 January 1971, Mr. and Mrs. York entered into a written, statutory partition agreement whereby Mr. York acquired the undivided one-half interest in York Tire Company as his separate property in exchange for relinquishing his community ownership claim to the undivided interest in Air Speed Oil Company of Lubbock. On 15 February 1972, Mr. York purchased his brother's ½ interest in York Tire Company with a $15,000 note. He paid the purchase money note with cash and earnings from York Tire Company. The evidence fails to show that Tommy York's ½ interest in York Tire Company was acquired by Mr. York as his separate property and estate.

In July of 1973, Mr. York negotiated a loan from the Small Business Administration for York Tire Company. On or about 17 July 1973, as a loan requirement, he formed York Tire Company, Inc., a corporation. The assets of York Tire Company and two service stations were exchanged for 100 shares of stock in the corporation. The two service stations were the community property of the parties. Seventy-eight shares of stock were issued in Mr. York's name and twenty-two shares were issued in Mrs. York's name. Mr. York testified that the 78 shares issued in his name represented his separate property interest in the corporation and that the 22 shares issued in Mrs. York's name were issued for the two service stations' assets contributed to the corporation from the community estate. In this connection, the evidence does not show a statutory partition of the corporate stock and Mr. York does not so contend. Assuming, arguendo, that the parties intended this separate-community division of interests, the separate or community natures of the shares of stock were fixed not by the mere intention of the parties, but by operation of law upon the existent facts. *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 568 (1961).

As previously stated, the assets of York Tire Company and the two service stations were exchanged for 100 shares of stock of the corporation. At the time of the exchange, Mr. York made a valuation of the assets exchanged for the 100 shares for stock. By this valuation, the combined value of the assets of York Tire Company and the two service stations was $77,911.53. The value of the assets of the two service stations was $17,098.40 and the value of the assets of York Tire Company was $60,813.13. The parties agree that the assets of the service stations were community property.

Mr. York's valuation of the assets of York Tire Company is as follows: (1) "equity 12–31–72" was valued at $9,609.52; (2) "Profit 1–1–73 to 6–30–73" was valued at $12,761.41;[1] (3) leased equipment was valued at $23,442.00; (4) "Phillips Jobber" was valued at $15,000. The "equity", Leased

1. This amount represents $15,933.41 with a "Draw" of $3,172.00.

Equipment, and "Phillips Jobber" assets were owned ½ by the community estate and ½ by Mr. York's separate estate. We reach this conclusion because Mr. York owned ½ of York Tire Company by virtue of the 2 January 1971 partition agreement, and the community estate owned ½ of the company by virtue of the community acquisition of Tommy York's ½ interest in the company. Moreover, the evidence fails to show that any post-partition increase in value of these assets is attributable or traceable to any post-partition, community-owned profits from the business. The total value of these assets was $48,051.72, and Mr. York's separate estate interest in such was $24,025.86.

■ The "Profit 1–1–73 to 6–30–73" asset at $12,761.41 was the community property of the parties. In Texas, the profits derived from a business enterprise carried on by either the husband or wife are community property, even though the capital of the business is the separate property of one of the spouses. *See Mitchell v. Mitchell,* 80 Tex. 101, 15 S.W. 705, 708 (1891). *See also Hardee v. Vincent,* 136 Tex. 99, 147 S.W.2d 1072, 1073 (1941); *Maben v. Maben,* 574 S.W.2d 229, 232 (Tex.Civ.App.—Fort Worth 1978, no writ); *Walker-Smith Co. v. Coker,* 176 S.W.2d 1002, 1007 (Tex.Civ.App.—Eastland 1943, writ ref'd, w.o.m.).

■ Moreover, in Texas, the time, talent and industry of either spouse is wholly owned by the community; and, if the separate property of one spouse is *increased* due to the time, talent and industry of either spouse, beyond that required to preserve such property, then the entire increase acquires a community character. *See Norris v. Vaughan,* 152 Tex. 491, 260 S.W.2d 676 (1953); *De Blane v. Hugh Lynch & Co.,* 23 Tex. 25, 29 (1859); *Dillingham v. Dillingham,* 434 S.W.2d 459 (Tex. Civ.App.—Fort Worth 1968, writ dism'd, w.o.j.); Comment, *The Effect of Community Time, Talent, and Industry Upon Separate Property,* 22 Baylor L.Rev. 527, 542 (1970). As our Supreme Court stated in *De Blane:*

If a crop is made by the labor of the wife's slaves on the wife's land, it is community property, because the law presumes that the husband's skill or care contributed to its production; or that he, in some other way, contributed to the common acquisitions.

23 Tex. at 29. The evidence shows that from the time Mr. York purchased his brother's ½ interest in the York Tire Company on 15 February 1972, he devoted all of his time, efforts and talent to operating the tire company and that the $12,761.41 profit in the company was the result of his community time, talent and industry.

■ Under the record before us, the total value of the assets contributed to the corporation was $77,911.53. The value of the community's interest in such assets was $53,885.67. The value of Mr. York's separate property interest in such assets was $24,025.86. Thus, Mr. York's separate property interest in the corporation was 30.8 percent and the community's interest was 69.2 percent. Accordingly, when we review the evidence and reasonable inferences therefrom in the light most favorable to the challenged conclusion that York Tire Company is 50% the community property of the parties and 50% the separate property of Mr. York, we must conclude that the probative evidence fails to support that conclusion. Thus, we sustain Mrs. York's sixth point of error.

■ Mrs. York further maintains that the court abused its discretion in dividing the property and estate of the parties, because such division was made by the court on the erroneous conclusion that the corporation was fifty percent the community property of the parties and fifty percent the separate property of Mr. York. We agree.

■ Section 3.63 of the Texas Family Code (Vernon 1975) gives the trial court broad discretion in dividing the community estate of the parties, and this discretion will not be disturbed unless an abuse of discretion is shown. *McKnight v. McKnight,* 543 S.W.2d 863, 866 (Tex.1976); *Cockerham v. Cockerham,* 527 S.W.2d at 167. In this in-

stance, the trial court found the fair market value of the corporation to be $377,600. As previously stated, Mr. York's separate property interest in the corporation was 30.8 percent, or $116,300.80. The trial court concluded that fifty percent of the value of the corporation, or $188,800, was the separate estate of Mr. York. By this erroneous conclusion the trial court removed $72,499.20 from its division of the community estate of the parties. This amount is substantial when viewed in light of the value of the entire community estate of the parties. Thus, under these circumstances, the trial court abused its discretion in dividing the estate of the parties. Accordingly, we sustain Mrs. York's contention.

Our disposition of Mrs. York's last stated contention and her sixth point of error requires that the judgment be reversed and cause remanded to the trial court. However, our reversal and remand disposition is not to be construed as any interference with the trial court's discretionary power to make the property division between the parties in a manner it deems just and fair on the basis of the evidence and proper equitable considerations. From the record, it is apparent that the trial court was attempting to divide the community property equally. Nevertheless, because it did so on an erroneous theory and excluded from consideration a significant amount of community property, it abused its discretion.

Accordingly, we reverse the judgment and remand the case to the trial court for trial under the correct theory.