

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00054-CV

_____

### IN THE MATTER OF THE MARRIAGE OF
### JOHN PAUL MONCEY AND TAMMIE JO MONCEY

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 11-0192

Before Morriss, C.J., Carter and Hill,* JJ.
Opinion by Justice Carter

_____

*John G. Hill, Justice, Retired, Sitting by Assignment

# OPINION

John Paul Moncey challenges the trial court's characterization of certain property during the division of assets in his divorce from Tammie Jo Moncey. John argues that the trial court erroneously labeled a twenty-three-acre piece of property containing the marital home and a Comstock mineral interest as Tammie's separate property. He also complains that a 1967 Chevrolet Corvette, which he claimed as his separate property, was mistakenly listed as an asset of the marital estate. We conclude that (1) the trial court correctly labeled the disputed real property as Tammie's separate property, (2) the Comstock mineral interest was community property, but that the mischaracterization did not warrant reversal of the property division, and (3) the 1967 Corvette was the separate property of John, and reversal is required on this point. Therefore, we affirm in part, reverse the trial court's judgment with respect to the finding that the Corvette was community property, and render judgment that the Corvette is John's separate property.

## I. The Twenty-Three Acres Containing the Marital Residence was Tammie's Separate Property

### A. Standard of Review

Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a) (West 2006). To rebut this presumption, the person seeking to prove the separate character of the property must do so by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b) (West 2006). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."

2

TEX. FAM. CODE ANN. § 101.007 (West 2008).  Any doubt as to the character of property should be resolved in favor of the community estate.  *Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.).

While the twenty-three-acre tract in dispute is property owned by a spouse on dissolution of the marriage, neither spouse characterizes the property as community; both parties recognize the twenty-three-acre tract is separate property, but John asserts he owns a one-half interest in the tract while Tammie claims she owns the entire interest.

The Texas Family Code requires the trial court to divide a marital estate in a "just and right" manner, considering the rights of the parties.  TEX. FAM. CODE ANN. § 7.001 (West 2006). "Trial courts can only divide community property, and the phrase 'estate of the parties' encompasses the community property of a marriage, but does not reach separate property." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam).

There is a presumption on appeal that the trial court properly exercised its discretion in dividing property in a divorce proceeding.  *In re Marriage of Robbins*, No. 06-10-00019-CV, 2010 WL 3168402, at *2 (Tex. App.—Texarkana Aug. 12, 2010, no pet.) (mem. op.).  When a trial court awards land to one spouse as their separate property, and the other spouse appeals the characterization, the "appellant must show that the court below" "clearly abused its discretion by a division that is manifestly unjust and unfair" "to convince an appellate court to disturb a trial court's property division."  *Id.* (quoting *Martin v. Martin*, 797 S.W.2d 347, 351 (Tex. App.—Texarkana 1990, no writ); *Quijano v. Quijano*, 347 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex. App.—Houston [14th

3

Dist.] 2009, no pet.))); *see McKnight v. McKnight*, 543 S.W.2d 863 (Tex. 1976); *Long v. Long*, 234 S.W.3d 34, 38 (Tex. App.—El Paso 2007, pet. denied).

In addition to challenging the legal and factual sufficiency of the evidence supporting the separate property characterization, reversal requires a harm analysis. *Long*, 234 S.W.3d at 38. Therefore, even if the trial court mischaracterizes property in its division of the marital estate, the error does not require reversal "unless the mischaracterization would have had more than a *de minimis* effect on the [ ] court's just and right division of the property." *Vandiver v. Vandiver*, 4 S.W.3d 300, 302 (Tex. App.—Corpus Christi 1999, pet. denied); *see Long*, 234 S.W.3d at 38; *Allen v. Allen*, 704 S.W.2d 600, 603 (Tex. App.—Fort Worth 1986, no writ); *King v. King*, 661 S.W.2d 252, 254 (Tex. App.—Houston [1st Dist.] 1983, no writ). Reversible error exists as a matter of law only if the trial court characterizes property as community property and awards it to one spouse when it is established as the separate property of the other spouse. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977).

Thus, assessments of the legal and factual sufficiency of the evidence are not independent grounds for reversal, but they are relevant factors in determining whether the trial court abused its discretion. *Quijano*, 347 S.W.3d at 349. John argues that the evidence is factually insufficient to establish that the "23 acres was entirely Tammie Jo's separate property." "An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered." *In re Marriage of Parker*, 997

4

S.W.2d 833, 836 (Tex. App.—Texarkana 1999, pet. denied) (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)).

Again, we reverse the trial court's judgment only where it "'clearly abused its discretion and if the error materially affects the court's just and right division of the property.'" *In re Marriage of Cigainero*, 305 S.W.3d 798, 800 (Tex. App.—Texarkana 2010, no pet.) (quoting *Bigelow v. Stephens*, 286 S.W.3d 619, 620 (Tex. App.—Beaumont 2009, no pet.)).

## B. Factual Background

The Monceys were married in 1989. In 1994, Tammie's father, Wesley Doyle Harris (Wesley), formed the W. Doyle Harris Trust, an irrevocable inter vivos trust funded by three tracts of land. The trust was to benefit Tammie and her two sisters, Becky Lynn Hutto and Pamela Harris Parrish. During Wesley's lifetime, the trust income was limited to being used on behalf of the trustor. At his death, the trustee was to distribute specific tracts of real estate to Wesley's three daughters. A limitation on the trustee's power prevented disposal of the property for less than adequate consideration "in money or money's worth . . . ." Wesley appointed Tammie as the trustee and gave her the power to sell, manage, convey, "or otherwise deal with trust property."

The disputed property, referenced as a "residence and 23 acres of land, Harris Road Marshall, Harrison County, Texas" was later added to the trust corpus. After Wesley's death, Tammie, Hutto, and Parrish executed an "AGREEMENT CONCERNING DISTRIBUTION

5

FROM THE W. DOYLE HARRIS TRUST; TRUSTEE'S DISTRIBUTION DEED; AND STIPULATION OF OWNERSHIP," otherwise known as the Exchange Deed.[1]

The Exchange Deed was executed "to provide a distribution of the remaining assets of the Trust but in an amount and form different from the method set forth in the Trust and Agreement."  The Exchange Deed stated:

> That Pamela Harris Parrish and Becky Lynn Hutto, owning their interest in the property described below as their sole and separate property and owning other property as their homestead, for and in consideration of the exchange of the property as described herein, has granted, transferred and conveyed and by these presents does grant, transfer and convey unto Tammie Harris Moncey and her husband John Moncey,[2] whose address is 4215 Blocker Road, Marshall, Texas 75672, all of Grantor's interest in the following described real property situated in Harrison County, Texas to wit:
>
> > All that certain 23.310 acres and 14.21 acres described on the attached Exhibits "C" and "D" respectively . . . .[3]

Hutto and Parrish bound "themselves, their heirs, legal representatives and assigns to warrant and forever defend, . . . the said premises unto the said Tammie Harris Moncey and husband."

Other parcels of land were deeded in a similar fashion to Hutto, Parrish, and their husbands.  After this language, the Exchange Deed read:

---

[1]The Exchange Deed rescinded a prior 1999 agreement to distribute the property, which did not include the sisters' husbands.

[2]The parties argue whether the language in the deed is ambiguous.  Tammie believes that the deed is ambiguous because the provision below the granting language states that "Tammie Harris Moncey shall own the property described in the attached Exhibit 'C' and 'D.'"  However, the statement that Tammie "shall own the property" does not dictate that John cannot also be considered an owner of the property because it does not describe Tammie as the sole owner.  We believe that the granting language is clear.  It is not in conflict with another provision, and we construe the granting language as written. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991).

[3]The grant to Tammie and John included the disputed property.

6

For the same consideration, each of the Tammie Harris Moncey, Individually and as Trustee, Becky Lynn Hutto, and Pamela Harris Parrish agree and stipulate that Becky Lynn Hutto will own the property described in the attached Exhibit "A", that Pamela Harris Parrish will own the property described in the attached Exhibit "B" and Tammie Harris Moncey shall own the property described in the attached Exhibit "C" and "D."[4]

Tammie conveyed her interest in the other properties to her sisters and their respective husbands, but did not individually or as trustee convey the property she and her husband received. She also signed the deed as trustee. John argued that the Exchange Deed constituted a gift and that the property is the separate property of both spouses, jointly owned. He also suggests that the Exchange Deed could "be taken as describing the community as the grantee."[5] Tammie argued that the entirety of the property was her separate property.

Tammie testified[6] that neither she nor her sisters intended to deed any property to their husbands, and an affidavit signed by Tammie stated:

> I realize that my husband's name is in the *Agreement Concerning Distribution from the W. Doyle Harris Trust*; *Trustee's Distribution Deed*; *and Stipulation of Ownership* as grantee or distributee, along with my two Sisters and their Husbands [sic] names; however, I have always considered that this property was my separate property. There was never any intention on my part to make any part of the land that I received a gift to him from my Dad's trust. There was never any discussion between John Paul Moncey and me concerning there being any type of gift to him of a one-half ownership interest in the land. Further, at the time of the execution of the Agreement, there was never any discussion by either Harold Parrish, John Paul Moncey or George Hutto that they were entitled to or were getting any ownership interest in the tracts of land my sisters and I received from

---

[4]At the time the property was acquired, the marital home was not yet built. John testified that he expended some funds to construct the home and that taxes on the property were paid by community funds.

[5]At trial, John's expert, attorney David Weatherbie, opined that the land was owned by Tammie and John as their community property, or, alternatively, that each had a one-half undivided separate property interest.

[6]Without specifying who, Tammie testified that "all six" people sat down to terminate the trust.

7

the W. Doyle Harris Trust, nor that any of the sisters were giving any interest to their spouses.

Parrish's affidavit averred, and she testified that "[i]t was never any of our intention that the Husbands [sic] would have any ownership interest in the land. To the contrary, it was always our intention that the property would be the sole and separate property of Tammie Harris Moncey, Becky Lynn Harris Hutto and me." Parrish's husband swore that he has "always known and considered this property as my wife's separate property. I have never had any claim to the property she inherited." The affidavits and testimony of Hutto and her husband contained similar recitations.

"In Texas, all property acquired by a spouse during the marriage generally belongs to the marital community, except property acquired by gifts, devises, or descent. *In re Knott*, 118 S.W.3d 899, 902 (Tex. App.—Texarkana 2003, no pet.); *see* TEX. FAM. CODE ANN. § 3.001(2) (West 2006). The trial court determined that the disputed "residence and 23 acres of land, Harris Road Marshall, Harrison County, Texas" was Tammie's sole separate property.[7]

### C.     Analysis

First, we begin with the principle that property possessed by either spouse during or at the dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN.

---

[7]In its findings of fact, the trial court wrote,

> The Real Properties of the Parties fell into Categories of both Separate Property and Community Property; with major Community Reimbursement Issues relating to the Parties' Home, which the court finds is Separate Property of Wife with a total value of $491,500.00 including a $200,000.00 Community Reimbursement and 10.21 Acres of Community Property valued at $61,300.00 adjoining wife's Separate Property, which is awarded to the Wife.

With respect to conclusions of law, the trial court simply wrote, "In keeping with the above Findings of Facts, the Court finds that the Division of the Marital Property was done in accordance with Chapter 7 of the Texas Family Law Code and Case Law Interpreting Chapter 7."

8

§ 3.003(a); *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975). The burden of rebutting the community presumption rests with the party claiming the disputed property as their separate property. *Pearson*, 332 S.W.3d at 363.

### 1. Parol Evidence Was Permissible to Show Grantors' Intent

John paid no consideration for the property. Thus, he argues that the disputed property was "received by gift jointly to both spouses during marriage" and is thus the separate property of each spouse. He further argues that the grant is unambiguous "and as a matter of law establishes a controlling objective intent to gift the property to Tammie Jo and John, in the form of co-owned separate property." John argues that the trial court erred in admitting parol evidence to determine the grantors' intent.

John primarily relies on the principle that the terms of an unambiguous deed cannot be varied by parol evidence. He asserts that since he is a named grantee in the deed without ambiguity, no further evidence of intent may be received. *See CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). But the entire basis for John's claim is that he received a gift, and in some instances, evidence of donative intent may be received.

One line of cases provides that a "deed for property from one spouse as grantor to the other spouse as grantee creates a presumption the grantee spouse received the property as separate property by gift." *Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied) (citing *Raymond v. Raymond*, 190 S.W.3d 77, 81 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Roberts v. Roberts*, 999 S.W.2d 424, 432 (Tex. App.—El Paso 1999, no pet.)).

9

This presumption may only be rebutted by proof that a deed was procured by fraud, accident, or mistake, *Id.* at 912–13, causes of action which were not argued here.

Absent such allegations, John argues that parol evidence is not allowed. However, this caselaw only applies in a situation where there is a deed from one spouse as the grantor to the other spouse. Tammie's sisters were grantors under the Exchange Deed. Thus, because this is not a conveyance from one spouse as the grantor to the other, this presumption, which would operate to exclude the parol evidence introduced, does not apply. *See id.*

Yet, "[w]hen a spouse uses separate property to acquire land during marriage and takes title to the land in the names of both the husband and wife, it is presumed that the interest placed in the nonpurchasing spouse is that of a gift." *In re Marriage of Greenslate*, No. 06-00-00117-CV, 2001 WL 691472, at *3 (Tex. App.—Texarkana Jun. 21, 2001, no pet.) (not designated for publication) (citing *Cockerham*, 527 S.W.2d at 168); *Purser v. Purser*, 604 S.W.2d 411, 414 (Tex. Civ. App.—Texarkana 1980, no writ). "The taking of title in both names does not change the result of tracing, but creates a presumption of a gift of one half of the separate property." *Greenslate*, 2001 WL 691472, at *3 (citing *In re Marriage of Thurmond*, 888 S.W.2d 269, 275 (Tex. App.—Amarillo 1994, writ denied)). This presumption can be rebutted by evidence clearly establishing there was no intent to make a gift. *Cockerham*, 527 S.W.2d at 168; *In the Marriage of Morris*, 12 S.W.3d 877, 881 (Tex. App.—Texarkana 2000, no pet.). To accomplish this, parol evidence is allowed. Thus, the trial court did not err in admitting the testimony and affidavits of Parrish, her husband, or Hutto.

10

## 2. *John Could Not Meet His Burden to Show that One-Half of the Property Was His Separate Property*

### a. John Did Not Receive a Gift From the Trust

The burden rests with the party claiming the disputed property as their separate property. *Pearson*, 332 S.W.3d at 363. "An attempted gift by a third party to the community estate vests each partner with a one-half undivided interest in the property as his or her separate property." *Roosth v. Roosth*, 889 S.W.2d 445, 457 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see In re Marriage of Royal*, 107 S.W.3d 846, 851 (Tex. App.—Amarillo 2003, no pet.); *Dutton v. Dutton*, 18 S.W.3d 849, 852 (Tex. App.—Eastland 2000, pet. denied); *see also Jones v. Jones*, 804 S.W.2d 623, 627 (Tex. App.—Texarkana 1991, no writ) (A gift to both spouses "cannot be community property, but must be characterized as separate property co-owned" by the spouses.).

A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Magness*, 241 S.W.3d at 912; *Roberts v. Roberts*, 999 S.W.2d 424, 432 (Tex. App.—El Paso 1999, no pet.). Three elements are required to establish the existence of a gift: (1) intent to make a gift, (2) delivery of the property, and (3) acceptance of the property. *Magness*, 241 S.W.3d at 912 (citing *Roberts*, 999 S.W.2d at 432). Generally, the burden of proof rests on the person claiming the existence of a gift. *Roberts*, 999 S.W.2d at 432. "[T]he intent must exist at the time of the transfer." *Long*, 234 S.W.3d at 40.

11

John argues that the disputed property was "received by gift jointly to both spouses during the marriage" and is thus the separate property of each spouse. He believes that one-half[8] of the property was given as "a gift from Mr. Harris through his Trust" by Tammie acting in her capacity as the trustee. The difficulty with John's argument is that Tammie did not join in the conveyance of the disputed property in any capacity; only Hutto and Parrish are the grantors of the property to Tammie and John. Thus, the addition of John's name to the granting clause cannot be classified as a gift from the trust.

### b. John Did Not Receive a Gift From Tammie

In considering whether John received a gift by this transaction, it is necessary to consider whether Tammie gave a one-half interest in the property to John by negotiating the Exchange Deed with her sisters. The interest that Tammie and her sisters acquired in the four tracts of land, which comprised the trust corpus, was a gift from Wesley. In fact, the Exchange Deed recites that their respective interests were the sisters' "sole and separate property." After Wesley's death, Tammie and her sisters decided to negotiate a distribution of the trust corpus in a manner inconsistent with the termination distributions that were previously set forth. With respect to the first parcel of land, Tammie and Parrish, "each owing and claiming their interest in" parcel one "as their sole and separate property," gave up their right to the property so that it could be conveyed outright to Hutto and her husband. With respect to parcel two, Tammie and Hutto gave up their beneficial interest in parcel two, which they claimed as "their sole and

---

[8]John does not dispute Tammie's claim that one-half of the property conveyed by the Exchange Deed is her separate property. John agrees that Tammie met her burden to establish that at least one-half of the property was her separate property acquired by gift from her father.

12

separate property[,]" so that parcel two could be conveyed to Parrish and her husband. Likewise, Parrish and Hutto relinquished their interest to the disputed property, which was conveyed to Tammie and John. Thus, Tammie gave consideration for the acquisition of the disputed property in the form of Tammie's relinquishment of her separate property rights to parcels one and two.[9]

"[T]he intent [to gift] must exist at the time of the transfer." *Id.* We have already held that this case does not present a situation where Tammie, as the sole grantor, conveyed the property to John. Thus, parol evidence was allowed to determine Tammie's intent in taking the property in both names. Here, because Tammie testified that there was no intent to gift the property to John and that they had no discussions about her doing so and because no further evidence was presented to challenge Tammie's intent, John was unable to meet his burden to show that he was given a one-half interest in the property by this exchange deed.

*3.        Tammie Established the Separate Property Nature of the Disputed Property*

John's failure to prove that the conveyance was a gift either from the trust or Tammie returns the parties to the starting position that the property is presumed to be community property. That is because a deed, such as the one at issue here, from a third party (Hutto and Parrish) that is in the names of both husband and wife raises a community presumption which is rebuttable and "operates only in the absence of satisfactory proof to the contrary." *Sparks v. Humble Oil & Ref. Co.*, 129 S.W.2d 468, 469 (Tex. Civ. App.—Texarkana 1939, writ ref'd); *see Dutton*, 18 S.W.3d at 852 (citing *Dakan v. Dakan*, 83 S.W.2d 620, 626 (Tex. 1935)). Thus,

_____

[9]This is very similar to the more usual occurrence where one spouse uses his separate property to acquire property and places the newly acquired property in the name of both spouses. The property is conveyed to the spouses by a third party. In that event, the spouse supplying the separate consideration may present parol evidence to rebut the presumption that a gift was intended to the other spouse. *Whorrall v. Whorrall*, 691 S.W.2d 32, 35 (Tex. App.—Austin 1985, writ dism'd).

Tammie next bore the burden to establish that the property in dispute was her separate property. *See Pearson*, 332 S.W.3d at 363.

Citing *In re Marriage of York*, John argues in the alternative that his expert witness indicated the property would be taken as describing the community as the grantee because Tammie failed to establish the separate property nature of the property by clear and convincing evidence. *In re Marriage of York*, 613 S.W.2d 764 (Tex. Civ. App.—Amarillo 1981, no writ). (John argues such an attempted gift to the community would result in a separate property tenancy in common.) In *York*, Wife's parents conveyed property to Husband and Wife via warranty deed reciting the payment of consideration. *Id.* at 767–68. The deed contained no recitation that the property was a gift or that it was conveyed to Wife as her sole and separate property and estate. *Id.* at 768. Thus, the community-property presumption applied. Wife's father testified that he intended to give the real property to Wife as her sole separate property. *Id.* However, there was testimony that Husband and Wife contemplated building the marital home on the property and that Husband told Wife that he would not take out a loan to build on the property unless he owned the property with her. *Id.* The court found that Wife failed to establish the separate nature of the property. *Id.* As in *York*, there is no indication that the Exchange Deed constituted a gift. However, unlike *York*, we find, as set forth below, that Tammie paid separate consideration for the property and presented factually sufficient evidence establishing that the property was her separate property.

Although we begin with a community property presumption, "[a] presumption of separate property arises where . . . the instrument of conveyance contains a separate property recital."

14

*Roberts*, 999 S.W.2d at 431; *see Roswurm v. Sinclair Prairie Oil Co*., 181 S.W.2d 736, 741–42 (Tex. Civ. App.—Fort Worth 1944, writ ref'd w.o.m.) (suggesting that general presumption that property acquired after marriage is community property "should be modified to the extent that such presumption would not prevail if the conveyance under which title was acquired co[n]tained language evincing the intention that it should be the separate property of one or the other of the spouses"). "A recital in an instrument of conveyance is considered to be a 'separate property recital' if it states that the consideration is paid from the separate funds of a spouse or that the property is conveyed to a spouse as his or her separate property." *Roberts*, 999 S.W.2d at 432. Here, the Exchange Deed specifically recited that consideration was paid in the form of relinquishment of Tammie's "sole and separate property" interests in parcels one and two and stated that "Tammie . . . shall own the [disputed] property."

The presence of such recitals negates the community property presumption, and "such recitals become prima facie evidence that the property is separate property." *Kyles v. Kyles*, 832 S.W.2d 194, 196 (Tex. App.—Beaumont 1992, no writ); *see Sanders v. Sanders*, No. 02-08-00201-CV, 2010 WL 4056196, at *16 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem. op.). That is because "[p]roperty acquired in exchange for separate property becomes the separate property of the spouse who exchanged the property." *Ridgell v. Ridgell*, 960 S.W.2d 144, 148 (Tex. App.—Corpus Christi 1997, no pet.) (citing *Dixon v. Sanderson*, 10 S.W. 535, 536 (Tex. 1888)); *Roswurm*, 181 S.W.2d at 741; *see generally Sparks*, 129 S.W.2d 468. This concept is based upon simple tracing principles. Thus, "regardless of whether the land is conveyed to the husband or wife, or to both of them, it becomes the separate property of the

15

husband, or wife, if the entire consideration is paid out of his, or her, separate estate." *Price v. Serv. Bureau, Inc.*, 165 S.W.2d 794, 796 (Tex. Civ. App.—Amarillo 1942, writ ref'd w.o.m.). "Thereafter, the spouse contending that the property is community property has the burden to defeat the separate property presumption." *Sanders*, 2010 WL 4056196, at *16. Our review of the evidence leads us to conclude that the separate-property presumption established by Tammie's payment of consideration from her sole separate property and the recitals in the Exchange Deed was not rebutted by John.

In addition, we have found that parol evidence was admissible to allow Tammie to attempt to rebut intent to make a gift. *See Pace v. Pace*, 160 S.W.3d 706, 711 (Tex. App.—Dallas 2005, pet. denied). Tammie presented evidence that she did not intend a gift to John. A gift cannot occur without the intent to make a gift. *Greenslate*, 2001 WL 691472, at *4. Tammie testified that she did not intend to make a gift to John, that John referred to the property as her separate property, and that she first received notice on April 27, 2011, that John was claiming an interest in the property. Tammie also introduced other evidence, in the form of testimony and affidavits of her sisters, that no gift was intended when their husbands were added to the granting clauses in the Exchange Deed.[10] "The testimony of an interested witness, without corroboration, even when uncontradicted, only raises an issue of fact." *Id.* (citing *Purser*, 604 S.W.2d at 413). However, Tammie also introduced testimony and affidavits from her sisters' husbands who, against their interests, testified about their understanding that no gift had been intended for them.

---

[10]Parrish testified she was aware that the deed contained her husband's name "at this point." During the execution of the Exchange Deed, Parrish said she "signed it, but [she] really wasn't aware that that's what was happening."

16

During John's direct examination, the following occurred:

Q. (By Mr. Troy) What are you -- who do you think owns that land and the house?

A. We both own it.

Q. Thank you.

A. For now.

Q. Who are you proposing the Judge would give that to at the end of this case?

A. I'm willing to give the house and land to her.

Q. You think she should be awarded that at the time analysis[?]

A. Yes, I do.

. . . .

THE COURT: Excuse me, Mr. Troy, before you go any further. It's my understanding that your client is wanting the twenty-three acres and the house and the workshop to go to Mrs. Moncey, or did I not understand?

MR. TROY: That is correct, Your Honor.

"The issue of whether a gift was intended is a question of fact . . . ." *Delahoussaye v. Kana*, No. 01-07-00579-CV, 2008 WL 4890131, at *4 (Tex. App.—Houston [1st Dist.] Nov. 13, 2008, pet. ref'd) (mem. op.); *see Greenslate*, 2001 WL 691472, at *4. In finding the property to be Tammie's separate property, the trial court found that Tammie did not intend to gift one-half of the property to John. *See Long*, 234 S.W.3d at 42. We have previously held that we will not disturb the trial court's factual findings when there is some evidence in the record to support them. *Greenslate*, 2001 WL 691472, at **4–5 ("The testimony of [wife] that she did not intend

17

for the purchase of the house as a gift to [husband] is probative."). Considering the evidence presented by Tammie, her sisters, and their husbands, and the exchange during John's direct examination, we cannot say that the trial court abused its discretion in finding an absence of donative intent. *See Long*, 234 S.W.3d at 41–42 (citing *Peterson v. Peterson*, 595 S.W.2d 889, 890 (Tex. Civ. App.—Austin 1980, writ dism'd) (discussing deference to be afforded trial court's findings)).

We conclude that Tammie established that the disputed property was her separate property. John's first point of error is overruled.

## II.     The Comstock Mineral Interest Was Community Property

The modified final decree of divorce listed "[a]ny and all interest, royalties, dividends and other benefits associated with Comstock Wells, owner #028046" as Tammie's separate property. Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a). To rebut this presumption, the person seeking to prove the separate character of the property must do so by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b). In reviewing the legal sufficiency of the evidence where the burden of proof is clear and convincing evidence, we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the trier of fact resolved disputed facts in favor of its finding if a reasonable trier of fact could do so, and we must disregard all contrary evidence that a reasonable trier of fact could have disbelieved or found to be incredible. *Id.*

18

At trial, John testified that this interest was community property. A binding partial mediated settlement agreement listed the interest, which was "in both names," and stated that its value was "immaterial if divided equally." While another mineral interest[11] was listed as Tammie's separate property, the mineral interest at issue was not identified as Tammie's separate property. Tammie's direct examination produced the following exchange:

> Q.  Did y'all buy that property that that's under --
>
> A.  No.
>
> Q.  -- that would be part of the estate? Is that right?
>
> A.  Yes, sir.
>
> Q.  And that's No. 16[12] and No. 13.
>
> A.  Right.
>
> Q.  And are you asking the Judge to award all community royalties to you?
>
> A.  I would like it.

The item number 13 referred to by counsel was the Comstock Oil & Gas #028046.

This unclear testimony merely established Tammie's desire to receive an award of this mineral interest, without clarification as to whether this was her separate property.[13] Further, we agree with John that the record is unclear as to which piece of land subsumes the mineral interest

---

[11]In total, there were four mineral interests that were divided by the parties.

[12]The mineral interest described as item number 16 was listed as Tammie's separate property.

[13]Tammie suggests that testimony "blatant[ly] im[pli[ed]" that the couple did not purchase the land which subsumed the mineral interest, that the land containing the mineral interest was a gift, and that the gift was from her father. We cannot interpret Tammie's testimony in such a liberal manner.

at issue here. We conclude that Tammie did not meet her burden to prove by clear and convincing evidence that the mineral interest was her separate property. Thus, the mineral interest should have been characterized as community property.

This mischaracterization will require "remand [of] the entire community estate to the trial court for a just and right division of the properly characterized community property," only if "the mischaracterized property would have affected the trial court's just and right division." *Morris*, 12 S.W.3d at 881; *see Vandiver*, 4 S.W.3d at 302. "It is appellant's burden to prove that any disparity in the division was caused by the mischaracterization of property and that it was of such substantial proportions that it constituted an abuse of the trial court's discretion." *Morris*, 12 S.W.3d at 884. The record reveals that there is no testimony or evidence which would show the value of this particular mineral interest, and John's brief fails to address the harm caused by the court's mischaracterization in a manner that would satisfy the burden mentioned above. Therefore, we must conclude that John has failed to demonstrate that the mischaracterization of the mineral interest described as Comstock Wells owner #028046 led to a manifestly unjust and unfair property division. *See Robbins*, 2010 WL 3168402, at *2.

We overrule John's second point of error.

## III. The 1967 Chevrolet Was John's Separate Property

The trial court's property division listed a 1967 Chevrolet Corvette, vehicle identification number (VIN) 194377S100978, as part of the marital estate. However, in a binding partial mediated settlement agreement, Tammie agreed that the 1967 Corvette was John's separate property. Tammie concedes the fact of this agreement and that "[t]he Trial Court mistakenly

20

divided the Corvette . . . as a part of the community estate instead of confirming it as a part of John's separate estate." John also testified that he owned this vehicle prior to the marriage.

"Certainly, a court cannot divest an owner of separate property." *Pearson*, 332 S.W.3d at 364 (citing *Eggemeyer*, 554 S.W.2d at 140–41) (concluding that taking separate property from one spouse and giving it to other violates Article I, Section 19 of Texas Constitution). "When a court mischaracterizes separate property as community property, the error requires reversal" as a matter of law. *Morris*, 12 S.W.3d at 880–81; *see Long*, 234 S.W.3d at 38.

We sustain John's third point of error.

## IV.     Conclusion

We reverse the trial court's judgment finding that the 1967 Chevrolet Corvette, VIN 194377S100978, was community property and render judgment that it is John's separate property. We affirm the trial court's judgment in all other respects.


              Jack Carter
              Justice


Date Submitted:     March 27, 2013
Date Decided:       May 17, 2013


21