

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00101-CV

IN THE MATTER OF THE MARRIAGE OF
EMMA RUTH VINSON AND BEN ANDREW VINSON, SR.

On Appeal from the County Court at Law
Rusk County, Texas
Trial Court No. 2011-12-590-CCL

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

When Emma Ruth (Ruthie) Vinson and Ben Andrew Vinson, Sr. (Ben), were divorced, the trial court awarded $243,000.00 in Ben's 401(k) plan to him as his separate property. The trial court classified the remainder of the 401(k) plan funds as community property and divided it equally between the parties. Ben appeals, claiming the trial court abused its discretion in failing to classify $113,206.37 in interest and account earnings—as opposed to contributions to the account—as his separate property as well. Finding no abuse of discretion, we affirm the judgment of the trial court.

## I. Background

Prior to their marriage on February 14, 1999, the parties executed a document titled "Agreement in Contemplation of Marriage" (Agreement), which classified certain property as the parties' separate property.[1] The Agreement specifically classified Ben's 401(k) plan as his separate property and further classified "all increment in value or appreciation of separate property" as separate property. Conversely, the Agreement classified account contributions as community property. The Agreement provided that "[a]ll employer or employee contributions made during this marriage to any retirement annuity contract, individual retirement account, profitsharing or pension plan or any other retirement savings arrangement . . . together with all future increment in value attributable to such contributions . . . shall be community property."

---

[1]The trial court concluded that the Agreement was valid and enforceable.

Ben entered the marriage with a 401(k) account through his employer, Citizens National Bank. The account value was listed on the Agreement as $234,424.00.[2] Sometime in 2002, Ben transferred his 401(k) account funds to Texas Bank as a rollover amount. At the time of the 2002 rollover, the account was valued at $293,891.00. As of December 31, 2013, the rollover amount had, according to Ben, increased in value to $347,206.37.

The trial court's docket indicates that the final hearing began on April 21, 2014, and was recessed "for ruling on characterization." A transcript of the April 21 hearing was not included as a part of the record in this appeal. By letter dated May 19, 2014, the trial court advised the parties of its ruling "on the issue of characterization of the property referred to as 'Ben Vinson's 401(k).'" In its letter ruling, the trial court addressed the issue of whether the "separate property funds in the 401(k) of Mr. Vinson were knowingly comingled with community funds so as to trigger the above section of the agreement making the entire fund community property."[3] The trial court concluded that "the separate property funds have not been comingled with community property funds and that the value of the separate and community funds can be ascertained." The court's letter ruling did not, however, indicate the value of the separate and community funds included in the 401(k) plan.

The final hearing was thereafter concluded August 13, 2014. At that hearing, Ben testified that he was asking the court to award him the portion of the 401(k) account that the court found as

---

[2]This value was listed as an "estimate."

[3]The section of the agreement referenced in this letter ruling was section 2.04, which provides, in part, "'any separate property defined by 2.01 or 2.02 which a party has knowingly invested in community property or has allowed to be comingled with community property shall be deemed to have become community property and all rights of reimbursement are hereby waived unless Ben and Ruthie agree in writing otherwise.'"

his separate property, plus the accruals (as opposed to contributions) to that amount to date. When

Ben indicated, "[W]e believe that we can distinguish the separate property and the accruals on the

separate property prior to any payments into it based on the new employment," Ruthie claimed

that Ben "waived any claim with regard to growth on that separate amount in our last hearing. And

agreed that he would -- if the ruling so went his way with you, they would take that amount of

money, and the rest would be community since that time." The court indicated its recollection

"that you all stipulated that the value that was in contention at the last hearing as to whether it was

community or separate property was $234,000." Ben indicated, "That's correct. The Court can

apply the Court's understanding of that. Whatever we said, obviously, we said."[4]

Testifying in reference to the December 31, 2013, account statement from American Funds

(the 401(k) account administrator),[5] Ben indicated that after he began his employment with Texas

Bank in February of 1999, he could not make additional payroll contributions or deposits into the

---

[4]Ben characterizes the stipulation as one in which the parties agreed "that the value of Appellant's Texas Bank 401k Plan account was approximately $234,000 at the time of the marriage." Ben further claims that the parties did not stipulate the amount or characterization of interest and accumulation on the $234,000.00.

[5]

## Account details

The summaries and quarterly transaction activity that follow provide key information about your account.

| Summary of contributions by type | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Contribution type | Current quarter | Year-to-date | Since initial investment | Ending balance | Percent vested | Ending vested balance |
| Your Contributions | $0.00 | $0.00 | $172,044.25 | $213,421.29 | 100% | $213,421.29 |
| Rollover Into Plan | $0.00 | $0.00 | $293,891.00 | $347,206.37 | 100% | $347,206.37 |
| Deemed Loan Repayments | $0.00 | $0.00 | $0.00 | $0.00 | 100% | $0.00 |
| Matching | $0.00 | $0.00 | $39,807.28 | $46,606.18 | 100% | $46,606.18 |
| Total | $0.00 | $0.00 | $505,742.53 | $607,233.84 | | $607,233.84 |

Your employer's contributions vest — or become yours — according to the schedule defined by the plan document. Your percent vested is based on information provided to American Funds and may not reflect the most current data. Please check with your employer for the most recent information.

4

account for a period of one year.  According to Ben, the account statement reflects contributions made during his employment at Texas Bank, together with the increase in value of those contributions.

At the conclusion of the hearing, the trial court stated,

As to the Texas Bank 401(k), I previously found the $234,000 was his separate property.  Any contributions or increase in that amount of money that was over that, I find would have been commingled, and so I'm using the $234,000 figure as his separate property.

As relevant to this appeal, the final decree of divorce awarded Ben

[a] portion of Ben Andrew Vinson, Sr.'s[,] retirement benefits in the Texas Bank 401k Plan arising out of Ben Andrew Vinson, Sr.'s[,] employment with Texas Bank as of the date that the Final Decree of Divorce is signed by the Court, that portion being FIFTY PERCENT (50%) of the amount remaining in the account after deduction of the amount owned by Ben Andrew Vinson, Sr.'s[,] separate estate ($234,000.00), together with any interest, dividends, gains, or losses on the amount awarded to husband arising since that date and more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this Final Decree of Divorce is signed.[6]

---

[6]The trial court also issued certain findings of fact and conclusions of law regarding the 401(k) account.  The court found:

8.      Prior to the parties' marriage, Respondent began making contributions into the Texas Bank 401k Plan.  As of the date of the marriage of the parties, the balance in Respondent's Texas Bank 401k plan was $234,000.00.

9.      During the marriage of the parties, Respondent, without the joinder of Petitioner, signed a note payable to the Texas Bank 401k plan in Respondent's sole name in the original principal sum of $50,000.00 which granted the Plan a security interest [sic] Respondent's Plan balance.  Under the terms of the premarital agreement signed by the parties, such note was an obligation of Respondent's separate estate.

10.     On October 2, 2013, after Respondent failed to timely make the note payments, the note was accelerated and the remaining principal of the note, together with interest, penalties, and other charges, were deducted from the balance held in the Texas Bank 401k plan.  The deducted sum equaled $41,696.15.

11.     Respondent made additional payments against the 401k loan from his earnings prior to the default and, together with the defaulted amount, the total amount of the payments paid

5

## II.    Standard of Review

The Texas Family Code requires the trial court to divide a marital estate in a "just and right" manner, considering the rights of the parties. TEX. FAM. CODE ANN. § 7.001 (West 2006). The trial court may generally exercise broad discretion in dividing a marital estate. The party complaining of the trial court's property division must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion. *Bigelow v. Stephens*, 286 S.W.3d 619, 620 (Tex. App.—Beaumont 2009, no pet.).[7] Accordingly, we will reverse the trial court's judgment only where it "'clearly abused its discretion and if the error materially affects the court's just and right division of the property.'" *Id.* (quoting *Nelson v. Nelson*, 193 S.W.3d 624, 628 (Tex. App.—Eastland 2006, no pet.)). If there is any reasonable basis for doing so, we must

---

by Respondent on the loan against the Texas Bank 401k was $51,843.08 which, under the premarital agreement signed by the parties, created an equitable claim owed to the community estate by Respondent's separate estate.

12.    Throughout the marriage of the parties, Respondent made deposits into the Texas Bank 401k account from his earnings.

13.    Throughout the marriage of the parties, Respondent's employer made deposits into the Texas Bank 401k account on behalf of Respondent.

14.    The total balance of the Texas Bank 401k account as of the date of divorce was $610,124.80.

The court also concluded,

6.    Respondent's separate property interest in the Texas Bank 401k Plan held in the name of Respondent at the time of the divorce was $234,000.00.

[7]Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion, *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991), but they are not independent grounds of error. *Ditraglia v. Romano*, 33 S.W.3d 886, 889 (Tex. App.—Austin 2000, no pet.).

presume that the trial court properly exercised its discretion. *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied).

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE ANN. § 3.003(a) (West 2006). To rebut this presumption, the person seeking to prove the separate character of the property must do so by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b) (West 2006). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). "Any doubt as to the character of property should be resolved in favor of the community estate." *In re Marriage of Moncey*, 404 S.W.3d 701, 706 (Tex. App.—Texarkana 2013, no pet.) (citing *Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.)).

III.    Analysis

Ben contends the accumulated value of the funds rolled into the 401(k) account in 2002—as distinguished from new contributions—as of December 31, 2013, was $347,206.37. Because the increase in the value of separate property is defined in the Agreement as separate property, Ben contends his separate estate was owed $347,206.37, rather than $234,000.00, as awarded by the trial court. This claim is based on Ben's testimony and on the 2013 American Funds account statement reflecting the different contribution components of the 401(k) plan.[8] The referenced

---

[8]*See* n.5, *supra*.

breakdown, according to Ben, reflects the value of his separate property interest, i.e., the amount rolled into the Texas Bank account, which increased in value over time.

Ben complains the trial court's ruling is contrary to the express language of the Agreement, which specifically preserved as his separate property the funds in his 401(k) account at the time of the marriage, as well as any appreciation in value to that amount after the marriage. The language of the Agreement is not in dispute. It does not, however, eliminate the requirement to prove, by clear and convincing evidence, that portion of the 401(k) account which represents the increase in value of Ben's separate estate. *See, e.g.*, *Michelena v. Michelena*, No. 13-09-00588-CV, 2012 WL 3012642, at *11 (Tex. App.—Corpus Christi June 15, 2012, no pet.) (mem. op.).

The evidence showed that Ben opened a new 401(k) account in 2002 and rolled the existing funds in his Citizens National Bank 401(k) account into the new account. The funds deposited into the new account totaled $293,891.00. At the time of the parties' marriage in 1999, the account was worth $234,000.00. There is no dispute that the account value at the time of the marriage belongs to Ben's separate estate. There is no evidence, however, to explain whether the increase in the account value from $234,000.00 to $293,891.00 was due, in whole or in part, to contributions (which would be characterized as community property under the Agreement) or appreciation in value (which would be characterized as separate property under the Agreement). Without this crucial evidence, the trial court was not in a position to determine what portion of the purported increase in value of the $293,891.00 by $113,206.37 from 2002 through 2013 was community property and what portion was Ben's separate property. Further, the December 31, 2013, account statement reflects a diverse investment mix, indicating that all account funds were held in various

8

investments and funds. Stated differently, both Ben's separate property and the parties' community property (account contributions) were intermingled for investment purposes.[9] There is no evidence to explain the degree to which, if any, the separate property was enhanced in value by the use of community funds. Likewise, there is no evidence of the precise character of the rollover amount at the time of the transfer in 2002. Accordingly, the trial court did not abuse its discretion in finding that Ben's separate estate was entitled to $234,000.00.[10]

## IV. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted: July 2, 2015
Date Decided: August 4, 2015

---

[9]

| Your current investment mix | | | Your future contributions | |
|---|---|---|---|---|
| 45.18% Growth | | | 45% Growth | |
| 15.93% The Growth Fund of America-R2 | $96,710.82 | | 15% The Growth Fund of America-R2 | |
| 15.84% New Perspective Fund-R2 | $96,215.07 | | 15% New Perspective Fund-R2 | |
| 13.40% EuroPacific Growth Fund-R2 | $81,373.84 | | 15% EuroPacific Growth Fund-R2 | |
| 26.03% Growth-and-Income | | | 25% Growth-and-Income | |
| 26.04% American Mutual Fund-R2 | $158,060.79 | | 25% American Mutual Fund-R2 | |
| 18.20% Equity Income | | | 20% Equity Income | |
| 18.20% Capital Income Builder-R2 | $110,538.39 | | 20% Capital Income Builder-R2 | |
| 10.59% Balanced | | | 10% Balanced | |
| 10.59% American Balanced Fund-R2 | $54,334.93 | | 10% American Balanced Fund-R2 | |
| Total 100.00% | $607,233.84 | | Total 100% | |

[10]Emma also contends that Ben stipulated at a hearing on April 21, 2014, that the separate property value of the 401(K) account was $234,000.00. We have reviewed the record of this hearing and find no such stipulation.

9