**Gabriel Juan LONG, Appellant,**

v.

**Danalyn Marie LONG, Appellee.**

No. 08–05–00250–CV.

Court of Appeals of Texas,
El Paso.

Feb. 15, 2007.

Rehearing Overruled April 11, 2007.

Jack Gayle Neal, Roanoke, for Appellant.

Robert J. Collins, Dallas, for Appellee.

Before CHEW, C.J., McCLURE, and BARAJAS, C.J. (Ret.).

## OPINION

ANN CRAWFORD McCLURE, Justice.

This is an appeal from a final decree of divorce in which characterization of property is at issue. The dispute centers on lake property purchased during marriage with the husband's separate funds. Finding no error, we affirm.

### FACTUAL SUMMARY

Gabriel and Danalyn Long were married on May 26, 1998. At the time of the marriage, Gabe was employed by Perot Systems, Inc. The parties stipulated that Gabe was granted stock options prior to marriage, that the options vested prior to marriage, and that they were exercised after marriage. From a total grant of 600 shares, Gabe sold 400 shares to pay the option price and netted 200 shares of Perot Systems stock. He then traded the Perot stock for Cisco shares which were then sold for $146,500. Counsel for both parties represented to the court that the sales proceeds were Gabe's separate property. Of this sum, $138,000 was used to purchase a lake lot. Gabe claimed the lot in its entirety as separate property. Danalyn claimed an undivided one-half interest in the lot as her separate property, claiming that by using his separate funds and taking title in both parties' names, Gabe had manifested an intent to make a gift. In findings of fact and conclusions of law, the trial judge found that Gabe's separate property was spent to purchase the lot, that Gabe gifted an undivided one-half interest in the lot to Danalyn, and that the value of the lot was $175,000. The court likewise entered conclusions of law that each spouse owned an undivided one-half interest as separate property. When asked whether he preferred to sell the lot and divide the proceeds, Gabe elected to purchase Danalyn's interest for $87,500.

## THE PRESUMPTIONS

All property on hand at the dissolution of marriage is presumed to be community property. *Tate v. Tate,* 55 S.W.3d 1, 4 (Tex.App.-El Paso 2000, no pet.); Tex.Fam.Code Ann. § 3.003(a) (Vernon 2006). It is a rebuttable presumption, requiring a spouse claiming assets as separate property to establish their separate character by clear and convincing evidence. *Id.;* Tex.Fam.Code Ann. § 3.003(b). Property owned before marriage, or acquired during marriage by gift, devise or descent, is separate property. *Id.;* Tex. Fam.Code Ann. § 3.002. Where an asset is purchased during marriage with monies traceable to a spouse's separate estate, the asset may appropriately be characterized as separate property. *Pace v. Pace,* 160 S.W.3d 706, 711 (Tex.App.-Dallas 2005, pet.denied).

A second presumption arises from the facts here. Where one spouse uses separate funds to purchase property during marriage and takes title to the property in joint names, we presume that a gift to the spouse is intended. *In re Marriage of Morris,* 12 S.W.3d 877, 881 (Tex.App.-Texarkana 2000, no pet.), *citing Cockerham v. Cockerham,* 527 S.W.2d 162, 168 (Tex.1975). This presumption may be rebutted by parol evidence establishing that no gift was intended. *Cockerham,* 527 S.W.2d at 168. A rebuttable presumption "shift[s] the burden of producing evidence to the party against whom it operates." *Lide v. Lide,* 116 S.W.3d 147, 152 (Tex. App.-El Paso 2003, no pet); *In the Interest of Rodriguez,* 940 S.W.2d 265, 271 (Tex. App.-San Antonio 1997, writ denied), *citing General Motors Corp. v. Saenz,* 873 S.W.2d 353, 359 (Tex.1993). Once that burden is discharged and evidence contradicting the presumption has been offered, the presumption disappears and is not weighed or treated as evidence. *General Motors Corp.,* 873 S.W.2d at 359. The evidence is then evaluated as it would be in any other case, and the presumption has no effect on the burden of persuasion.

## CHARACTERIZATION

In his first issue for review, Gabe complains that the trial court failed to characterize the lake lot as community property. In his second issue, Gabe challenges the court's finding that he gifted a one-half interest to his wife.

### *Framing the Issues*

An appeal directed toward demonstrating an abuse of discretion is one of the tougher appellate propositions. Most of the appealable issues in a family law case are evaluated against an abuse of discretion standard, be it the issue of property division incident to divorce or partition, conservatorship, visitation, or child support. While the appellant may challenge the sufficiency of the evidence to support findings of fact, in most circumstances, that is not enough. If, for example, an appellant is challenging the sufficiency of the evidence to support the court's valuation of a particular asset, he must also contend that the erroneous valuation caused the court to abuse its discretion in the overall division of the community estate. Here, however, we are asked to review an alleged characterization error. We must determine not only whether the trial court's finding of separate property is supported by clear and convincing evidence, we must also determine whether the characterization error, if established, caused the trial court to abuse its discretion. These two prongs require first, a showing of error, and second, a showing that the error was harmful. Tex.R.App.P. 44.1(a)(1)(no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of

appeals concludes that the error complained of probably caused the rendition of an improper judgment).

Three fact scenarios establish the appropriate structure of an appellant's characterization contention. First, suppose Wife claims Blackacre is her separate property and Husband claims the asset is community property. Second, suppose the trial court characterizes it as community property and awards it to Wife. On appeal, Wife must establish error; she must challenge that the characterization is against the great weight and preponderance of the evidence [a factual sufficiency complaint] or that separate property status was established as a matter of law [a legal sufficiency complaint]. She must also establish that the characterization error was harmful—because of the mischaracterization, the overall division of property constitutes an abuse of discretion. *In re Marriage of Morris,* 12 S.W.3d at 884 (mere mischaracterization of separate property as community property does not require reversal; it is appellant's burden to prove that any disparity in the division was caused by the mischaracterization of property and that it was of such substantial proportions that it constituted an abuse of the trial court's discretion); *Magill v. Magill,* 816 S.W.2d 530, 533 (Tex.App.-Houston [1st Dist.] 1991, writ denied)(accord).

Now suppose that given the same fact pattern, the trial court characterizes Blackacre as Wife's separate property and awards it to her. This time, Husband appeals. He must first establish error by challenging the legal or factual sufficiency of the evidence to support the separate property characterization. He must also conduct a harm analysis-because of the mischaracterization, the overall division of property constitutes an abuse of discretion. *Vandiver v. Vandiver,* 4 S.W.3d 300, 302 (Tex.App.-Corpus Christi 1999, pet. denied)(mischaracterization of community property as separate property is not reversible unless the mischaracterization had more than a *de minimus* effect on the just and right division).

It is only in the third scenario that reversible error exists as a matter of law. In this example, Wife claims Blackacre is separate property and Husband claims it is community property. The trial court characterizes it as community property and awards it to *Husband.* If Wife can establish that Blackacre is her separate property, it is unnecessary to show harm because divestiture of separate property is reversible error. *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex.1977); *In re Marriage of Morris,* 12 S.W.3d at 881. In this singular instance, there is no need to demonstrate that the overall property division constitutes an abuse of discretion.

### Standards of Review

We may review a trial court's findings of fact for both legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). In a traditional legal sufficiency review, we consider the evidence and inferences that tend to support the findings and disregard all evidence and inferences to the contrary. *Bernal v. Chavez,* 198 S.W.3d 15, 18 (Tex.App.-El Paso 2006, no pet.); *Catalina,* 881 S.W.2d at 297. If any probative evidence supports the factual finding, it must be upheld. *Bernal,* 198 S.W.3d at 18. In conducting a traditional factual sufficiency review, we consider all the evidence, including that which tends to prove the existence of a vital fact in addition to evidence which tends to disprove its existence. *Id.* The trial court's finding of fact must be so against the great weight and preponderance of the evidence as to be manifestly

wrong. *Id.* The trier of fact determines the weight to be given to the testimony and resolves any conflicts in the evidence. *Id.* at 19.

But traditional sufficiency review is heightened when the burden of proof is clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In a legal sufficiency review, we look at all the evidence in the light most favorable to the fact finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d at 266. In so doing, we must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* We should disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible, but this does not mean that we must disregard all evidence that does not support the finding. *Id.* If we determine that no reasonable fact finder could form a firm belief or conviction that the fact is true, then we must conclude that the evidence is legally insufficient. *Id.* In a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.*, *citing In re C.H.*, 89 S.W.3d at 25. We are to consider whether disputed evidence is such that a reasonable fact finder could not have resolved the dispute in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

### Inception of Title

Gabe has not and does not dispute that the lake lot was purchased with his separate funds. He pled it, he stipulated to an agreed statement of facts, he argued it to the trial court, and his brief in this court clearly states:

A summary of the undisputed evidence conclusively established the following:

\* \* \* \* \*

6. The total consideration for the purchase price was paid with the separate funds of the Appellant.

Nevertheless, he complains that the trial court failed to apply the inception of title doctrine in order to determine that the lake lot was community property. In short, he argues that since the lot was purchased during marriage, the community presumption prevails and he had a mere right of reimbursement for separate funds used in the purchase. We must disagree. All of the evidence, every shred of it, establishes that Gabe spent separate monies to buy the lot. We are not persuaded by his argument that the characterization of the property did not change from community to separate simply because he purchased the lot with separate funds and added Danalyn's name to the deed. The real issue is whether he intended to make a gift to his wife of an undivided one-half interest. If the evidence supports the trial court's finding, then Gabe owns one-half of the lot as his separate property and Danalyn owns one-half of the lot as her separate property. Because a gift by definition constitutes separate property, there can be no gift to the community estate. *Jones v. Jones*, 804 S.W.2d 623, 627 (Tex.App.-Texarkana 1991, no writ); *Higgins v. Higgins*, 458 S.W.2d 498 (Tex.Civ.App.-Eastland 1970, no writ). We overrule Issue One.

### *Was There a Gift?*

A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Hilley v. Hilley*, 161 Tex. 569, 342 S.W.2d 565, 569 (1961); *Roberts v. Roberts*, 999 S.W.2d 424, 431 (Tex.App.-El Paso 1999, no pet.). Three elements are required to establish the existence of a gift: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Harrington v. Bailey*, 351 S.W.2d 946 (Tex.Civ.App.-Waco 1961, no writ). Without intent, there is no gift. Similarly, the intent must exist at the time of the transfer, not at the time of a subsequent divorce. *Rusk v. Rusk*, 5 S.W.3d 299, 303 (Tex.App.-Houston [14th Dist.] 1999, pet. denied), *citing Ellebracht v. Ellebracht*, 735 S.W.2d 658, 659 (Tex.App.-Austin 1987, no writ). A gift by one spouse to the other may be set aside if induced by duress or undue influence. *Roberts*, 999 S.W.2d at 431. Once that claim is made, the burden shifts to the donee to establish that the gift was fair and equitable. *Id.* Thus, Gabe bore the burden to plead and prove by clear and convincing evidence that the lake lot was purchased with separate property. This he did. The deed created a rebuttable presumption of gift because it was purchased with his separate property and title was taken in both names. The presumption vanished when Gabe testified that he did not intend to make a gift. Danalyn then had the burden to establish, by clear and convincing evidence, that a gift was intended. We review the evidence with these principles in mind.

At trial, Gabe testified he did not intend to make a gift.

Q: Now at the time that you—why did you agree to put her name on the contract and not the deed to begin with?

A: Because she asked me and I sure didn't want any turmoil at the house.

Q: Did you intend for this to be a gift to her?

A: No, I did not intend for it to be a gift. If she would have left me the next day, I would have never gifted her the land.

He was then impeached with his deposition testimony that there was no reason to believe he and his wife were not the owners of the property. The following exchange then occurred:

Q: All right. You testified that there is no reason. I asked is there any reason to believe that you and your wife are not owners of that property and you said no, and now there is a reason?

A: Sir, at the time, I don't know all these legal issues. She asked me that she'd like to put her name on there, we put her name on there. I don't know any legal ramifications. I said yes. I don't want no turmoil. I love her, we did it. Now, is my intent if she left me the next day just to gift her half the property? Absolutely not, but I thought part of marriage was—if she had her name, if I die, in the future our children and we live there, sure, it's hers.

Q: You keep saying it's not your intention to gift it if you had known she'd leave you the next day. Well, she didn't leave you the next day, did she?

A: No, but she left me six years later, but it's still not my intent to gift her half the property.

Q: And even though—

A: Sir, if you're asking me do I know the difference now between community and separate, absolutely. Did I know the legal ramifications then? No. I thought what was hers is mine and mine is hers. I didn't question. She just asked me if she could put her name and we went there the next time and we put her name.

Danalyn testified on the issue as well. The couple had been looking for property and located the lot in question. The owner waited for several months but Perot had not gone public. The owner ultimately accepted another offer and the Longs lost the property. When Perot went public and the stock options were exercised, the Longs wrote letters to owners in the area who had not yet built on the lots. The then-current owner of the lot they had previously liked called Danalyn to inquire if they were still interested in buying. Gabe met with the seller and explained the arrangements to his wife:

A: 'Yes, he's agreed to sell it to us. Here's the date, here's the title company,' who we used to sell his house; the title company, we're going to go there. Well, before we went to it I said, 'Well, we had a discussion,' and I said, 'Well, wait a minute. You know, I think I saw some paperwork, something, and my name wasn't on there.' And I said, 'Wait a minute. Is this your land, is this going to be your land and your house or is this going to be our land and our house because we've done all this together?'

And he said, 'No, no, please come. This is ours, this is ours,' and so when we went there. He requested that I have my name put on there because this was going to be ours.

Q: And did you also ask to have your name put on the title, the deed, the warranty deed?

A: Yes. Well, it was—I mean I wanted to be part of the land. I wanted it to be both of ours, so yes . . .

\* \* \* \* \*

Q: Did Gabe ever tell you or intimate in any way, that hey, I'm putting up the money for this, I think it's my money, and you're not part of it?

A: No. It was always ours.

According to Danalyn, the plan was to build their home and live there, rather than in the home that Gabe owned before the marriage. She met with the architect and the interior designer to develop the plans "because this was our house, this was our dream."

Without question, there is conflicting evidence, not only between Gabe and Danalyn but also between Gabe's trial testimony and his deposition testimony. As is frequently the case, gifts made during marriage generally do not seem like such a good idea when the marriage crumbles. Gabe relies on *Peterson v. Peterson,* 595 S.W.2d 889, 890 (Tex.Civ.App.-Austin 1980, pet. dism'd) for the proposition that he sufficiently rebutted the presumption of gift. There, Mr. Peterson purchased a home using his separate funds during the marriage. On the day of the closing, Mr. Peterson phoned his wife to tell her he didn't think it was necessary for her to attend. *Id.* Mrs. Peterson refused to move into the home unless her name appeared on the deed. *Id.* At the time of divorce, Mr. Peterson testified he merely added his wife's name to the deed in order to consummate the sale because he wanted to accommodate his wife and did not want to cause any trouble during the early stage of his marriage. *Id.* at 892. He added her name to make her happy and assure her that "she had a place to live the rest of her life" and "then at her death, it would be passed on to my children." *Id.* at 890. The court of appeals determined there was legally sufficient evidence to support the trial court's ruling that Mr. Peterson did not intend to make a gift to his wife. *Id.* at 893. Therein lies the distinction. The trial court believed Mr. Peterson's testimony and concluded he had satisfactorily rebutted the presumption. Applying the appropriate standard of review, the court of

appeals affirmed. Had the trial court determined Mr. Peterson did *not* rebut the presumption, the appellate court could just as easily have affirmed. A factual sufficiency review, particularly under the standard applied in 1980, gave great credence to the fact finder and his or her discretion in determining the weight and credibility to be accorded to the testimony. We do not perceive *Peterson* as controlling.

We have reviewed all of the evidence in the light most favorable to the gift finding and conclude that a reasonable trier of fact could have formed a firm belief or conviction that a gift was intended. *In re J.F.C.*, 96 S.W.3d at 266. We have assumed that the trial court resolved disputed facts in favor of the gift and that a reasonable fact finder could do so. *Id.* We have disregarded all evidence that a reasonable fact finder could have disbelieved or found to be incredible. *Id.* We therefore conclude that the evidence is legally sufficient. *Id.* In our factual sufficiency review, we have given due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id., citing In re C.H.*, 89 S.W.3d at 25. We have considered whether the disputed evidence is such that a reasonable fact finder could not have resolved the dispute in favor of its finding. *Id.* In light of the entire record, the evidence is such that a fact finder could reasonably have formed a firm belief or conviction that a gift was intended. We thus conclude the evidence is factually sufficient. We next address two corollaries to Gabe's second issue.

### Deemed Findings

■■■ Gabe first complains that the trial court made no specific fact findings on the underlying elements required to establish a gift. The court found that the lake lot was purchased with Gabe's separate funds, that both names were included on the sales contract and the deed, and that Gabe gifted an undivided one-half interest to Danalyn. Gabe did not request additional or amended findings. When the trial court gives express findings on at least one element of a claim, implied findings on the omitted unrequested elements are deemed to have been made in support of the judgment. In other words, if a party secures an express finding on at least one element of a claim, then deemed findings arise as to the balance of the elements. *Lindner v. Hill*, 691 S.W.2d 590 (Tex.1985); *Dunn v. Southern Farm Bureau Casualty Insurance Co.*, 991 S.W.2d 467 (Tex.App.-Tyler 1999, pet. denied); *Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d 900 (Tex.App.-Houston [14th Dist.] 1991, writ denied). Where deemed findings arise, it is not an appellee's burden to request further findings or to complain of other findings made. It is the appellant's duty to attack both the express and implied findings. The trial court's finding that Danalyn's name was included on the contract and the deed with Gabe's consent and approval relates to two elements necessary to establish a gift—delivery of the property and acceptance of the property. Intent is an implied finding subject to evidentiary attack. Gabe has attacked the sufficiency of the evidence as to intent, but he has waived any error with regard to the trial court's failure to make a specific finding on that issue.

### Continued Viability of the Presumption

Finally, Gabe traces the history of the gift presumption and challenges its continued viability. He notes that the rationale for the presumption was the fact that a husband had both the legal and moral obligation to support his wife, that the wife had limited rights under the law, and that one spouse cannot make a gift to the community. With the enactment of the transmutation statutes, spouses now have

expanded options in dealing with their financial resources. Section 4.202 permits spouses by written agreement to convert separate property to community property. *See* TEX.FAM.CODE ANN. Title 1, Chapter 4, Subchapter C, § 4.201 *et. seq.*, added by Acts 1999, 76th Leg., R.S., ch. 692, § 3, eff. Jan. 1, 2000. The change in the law required a constitutional amendment, which was approved on November 2, 1999. Proponents of the new statutes lauded the tax benefits while opponents cautioned that unscrupulous individuals would take advantage of unwitting spouses. While Gabe's argument is intellectually stimulating, it is inapplicable here. At the time the lot was purchased—October 8, 1999—any interest conveyed to Danalyn would necessarily be separate property. Conveyance of Gabe's separate property to the community estate was unconstitutional at the time.

We overrule Issue Two. Having overruled both issues for review, we affirm the judgment of the trial court.

BARAJAS, C.J. (Ret.), sitting by assignment, not participating.