

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BRUCE WHEATLEY, in his capacity as Executor of the Estate of Judith T. Wheatley, | § | No. 08-18-00106-CV |
| Appellant/Cross-Appellee, | § | Appeal from the |
| | § | |
| v. | § | Probate Court No. 1 |
| | § | |
| DALE FARLEY, in his capacity as Dependent Administrator of the Estate of Travis B. Kirchner, | § | of El Paso County, Texas |
| | | (TC# 2014-CPR01539) |
| | § | |
| Appellee/Cross-Appellant. | § | |

**<u>DISSENTING OPINION</u>**

I dissent in part, and join in part, my colleagues' opinion. There are a great many questions about Travis Kirchner's actions between the Fall of 2011 and his eventual death. Perhaps that is inevitable when the principal actor in this case—Travis—spent his final days behind prison walls. Nor did it help that Judy passed away before the case went to trial. But we take appellate records as we find them, and I conclude the trial court did not err in granting a directed verdict on the validity of the deeds given the lack of evidence on delivery. I fully agree with the majority opinion

on the lack of factually sufficient evidence to support the amount of the services rendered claim.

The majority ably sets out the facts which I need not repeat here. The majority opinion also correctly states that a deed must be delivered to be valid. TEX. PROP. CODE ANN. § 5.021. The majority then relies on the rebuttable presumption that an executed deed found in the possession of the grantee was in fact delivered. *See*, *e.g.*, *Bell v. Smith*, 532 S.W.2d 680, 685 (Tex.App.--Fort Worth 1976, no writ); *Chandler v. Hartt*, 467 S.W.2d 629, 633 (Tex.App.--Tyler 1971, writ ref'd n.r.e.). This presumption, however, is rebuttable. *Chandler*, 467 S.W.2d at 633. Once Farley comes forward with contrary evidence, the presumption disappears, and the case rises or falls on the remaining evidence. As this Court wrote:

> A rebuttable presumption "shift[s] the burden of producing evidence to the party against whom it operates." *Lide v. Lide,* 116 S.W.3d 147, 152 (Tex.App.--El Paso 2003, no pet); *In the Interest of Rodriguez,* 940 S.W.2d 265, 271 (Tex.App.--San Antonio 1997, writ denied), *citing General Motors Corp. v. Saenz,* 873 S.W.2d 353, 359 (Tex. 1993). Once that burden is discharged and evidence contradicting the presumption has been offered, the presumption disappears and is not weighed or treated as evidence. *General Motors Corp.,* 873 S.W.2d at 359. The evidence is then evaluated as it would be in any other case, and the presumption has no effect on the burden of persuasion.

*Long v. Long*, 234 S.W.3d 34, 37 (Tex.App.--El Paso 2007, pet denied). A rebuttable presumption does not shift the ultimate burden of proof. *See Garza v. Mission*, 684 S.W.2d 148, 152 (Tex. App. --Corpus Christi 1984, writ dism'd w.o.j.); *see also Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993).

I would agree with the majority that the mere fact that no witness testified to delivery of the deeds does not rebut the presumption, nor would the non-recording of the deed. *See Foster v. Cumbie*, 315 S.W.2d 151 (Tex.App.--Dallas 1958, writ ref'd n.r.e.). I part ways with the majority over two other pieces of evidence that Farley offered. First, the fact that Travis took affirmative actions to sell the property, and then specifically devise the property in a new will *after* the deeds were executed would indicate that he did not intend to actually transfer the property upon his

2

execution of the deeds. And more significant, Judy was informed that she was disinherited of ownership of the property in Travis's last will. She was upset by that turn of events, but never expressed to Farley, who saw her often, that she was already the owner of the property. Logically, if she had been given the deeds, she would have mentioned that to Farley in the face of a conflicting claim of ownership. Collectively, this evidence effectively rebuts any "presumption" of delivery, particularly when all we know is that the deeds were found somewhere in the house where Judy lived, and after her possessions became comingled with Travis's possessions.

Once the presumption disappears, the remaining evidence is governed by the "equal inference" rule. Under that rule, "a jury may not reasonably infer an ultimate fact from 'meager circumstantial evidence which could give rise to any number of inferences, none more probable than another.'" *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013), *quoting Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005) ("When the circumstances are equally consistent with either of two facts, neither fact may be inferred."); *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001) (Phillips, C.J., concurring in part and dissenting in part) (noting that the equal inference rule is a species of the no-evidence rule that "when the circumstantial evidence is so slight that any plausible inference is purely a guess, it is in legal effect no evidence").

The deeds found in Judy's abode could have been in her papers. Or, they could have been part of Travis's papers, that became part of her papers when his house was cleaned out. Bruce Wheatley, the person who actually found the deeds and gave them to Farley, did not testify at the trial, so there is no basis to say the deeds were found in what might have been Judy's papers, as distinct from what might been Travis's papers (assuming there was any basis to distinguish the two). Given these equal and opposite possibilities, no interference of delivery can be made from

3

the trial record, and I conclude the trial court did not err in granting the directed verdict.


JEFF ALLEY, Chief Justice

August 5, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.