

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00115-CV

Robert **DESPAIN**,
Appellant

v.

Laura Ann **DESPAIN**,
Appellee

From the County Court, Atascosa County, Texas
Trial Court No. 20-07-0609-CVA
Honorable Bob Brendel, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: April 27, 2023

AFFIRMED

This appeal arises from a final decree of divorce after a bench trial. On appeal, Robert

DeSpain ("Bob") argues the trial court erred in divesting him of a one-half interest in his separate

real property by awarding a one-half undivided interest in the property to his former wife, Laura

Ann DeSpain ("Laura"). We affirm.

**BACKGROUND**

On May 25, 1996, Bob and Laura married and subsequently had two children, who are now adults. Because Bob's widowed mother, Robbie DeSpain ("Robbie") suffered from medical issues that required extended hospitalizations, in 2010 Bob and Laura invited Robbie to live with them and their children in their mobile home. In 2011, Laura obtained a building, which she and Bob placed on their property and converted into a small apartment for Robbie to live. Throughout the time Robbie lived with Bob and Laura, Laura helped care for Robbie by taking her to doctor appointments, providing companionship, preparing meals, and providing other household assistance.

In 2013, Robbie inherited $500,000 in life insurance proceeds when her mother passed away. Robbie opened a bank account at Security Service Federal Credit Union and deposited the funds. Bob was a signatory on the account, and both Bob and Robbie wrote checks from the account to pay expenses. Bob testified he was a "co-owner" of the account. However, there was other evidence admitted at trial from which a reasonable fact finder could conclude that Robbie added Bob's name to the account for her own convenience and for the protection of the funds. Bob admitted at trial that Robbie had added his name to another bank account for just that purpose— her convenience. Nevertheless, he testified that this Security Service account at issue was different. It is undisputed that while Robbie deposited additional funds into the account that she received from oil and gas royalties, Bob never deposited any of his own funds into the account. Robbie's funds were the sole source of deposits to the account.

In 2013 and 2014, Robbie, Bob, and Laura had discussions about Bob and Laura purchasing 19.72 acres of land adjacent to their property and building a family residence upon the 19.72 acres. It is undisputed that Robbie provided the funds from her Security Service bank account for the purchase of the 19.72 acres and the construction of the family home. What was

disputed at trial was whether Robbie intended to make a gift solely to Bob, or jointly to Bob and Laura.

On February 18, 2014, *both* Bob and Laura entered into a farm and ranch contract with Claude R. Chew to purchase the 19.72 acres. On May 13, 2014, after closing, Claude R. Chew executed a deed conveying the 19.72 acres to *both* Bob and Laura. A year after the family residence was built with Robbie providing the funds from her Security Service bank account. Bob and Laura then used $95,000 of their community funds to build an in-ground pool and outdoor kitchen as permanent improvements to the property.

On or about July 7, 2020, Laura learned that Bob was having an extramarital affair. On July 17, 2020, Bob filed for divorce. After a bench trial, the trial court found that during the marriage, Bob had inherited $1.67 million in separate real property. However, the trial court found that the funds used to purchase the 19.72 acres and build the family home were a gift to both Bob and Laura. Alternatively, the trial court found that "if Robbie did not intend to give the funds to purchase the 19.72 acres and construct the home thereon to both Bob and Laura, Bob nevertheless gave one-half of the funds and/or 19.72 acres and funds used to construct the home thereon to Laura . . . ." Accordingly, the trial court found that Bob and Laura's interest in the 19.72 acres and family home constituted their separate property, respectively, and was not part of the community estate.

## CHARACTERIZATION OF PROPERTY

Bob argues the trial court erred by divesting him of a one-half interest in his separate property in the 19.72 acres and ordering that the proceeds from the sale of the 19.72 acres be divided fifty-fifty between him and Laura. According to Bob, the evidence conclusively established that the 19.72 acres was purchased using insurance proceeds that Robbie gifted to him.

He argues the evidence is legally and factually insufficient to support the trial court's finding that the funds used to purchase the 19.72 acres were gifted to both him and Laura, and not to him alone.

In a bench trial, the trial court acts as the fact finder in assessing the credibility of the witnesses, weighing the evidence, and arriving at findings of fact. *See In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Accordingly, the trial court is the sole judge of the weight and credibility of the witnesses. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). As an appellate court, we defer to the trial court's fact findings and cannot substitute our own judgment for that of the fact finder. *In re J.M.T.*, 519 S.W.3d at 267.

*A. Trial Court's Fact Findings*

In support of its conclusion that the 19.72 acres was the separate property of both Bob and Laura, the trial court made the following findings of fact:

> Finding of Fact No. 4: In 2010, Bob and Laura invited Bob's widowed mother, Robbie, who suffered from medical issues requiring extended hospitalization, to live with them and their children in their mobile home.

> Finding of Fact No. 5: In 2011, Laura obtained a building that the couple converted into a small apartment for Robbie to live in. Throughout the time Robbie lived with them, Laura helped care for Robbie by taking her to doctor appointments, providing companionship, preparing her meals, and other general household assistance.

> Finding of Fact No. 6: In 2013, Robbie's mother died, leaving Robbie to inherit approximately $500,000 in life insurance proceeds. At this time, Robbie was estranged from her daughters and wanted to protect the inherited funds from them.

> Finding of Fact No. 7: Robbie opened an account at Security Service Federal Credit Union to deposit the inherited funds. Upon the recommendation of Robbie's friend, Barbara Peeler, Robbie added Bob's name to her Security Service Account No. XXXX6075 ("Security Service Account") for convenience and protection of the funds. Neither Bob nor Laura deposited their own personal funds into the Security Service Account. Robbie deposited additional funds into the account that she received from oil and gas royalties and wrote checks from the account. Robbie's funds were the sole source of deposits to the account, and Robbie retained dominion and control over the

funds in the account. At no time did Robbie absolutely and irrevocably release control of the funds in the account.

Finding of Fact No. 8: At no time did Robbie give the funds in the Security Service Account solely to Bob. Thus, Bob did not own a separate property interest in the funds while they were in the Security Service Account.

Finding of Fact No. 9: During 2013 and 2014, Robbie, Bob, and Laura had discussions about Bob and Laura purchasing 19.72 acres of land adjacent to their 50 acres and building a new home for the entire family to reside. Robbie, Bob, and Laura had multiple conversations where Robbie expressed her desire and intent to help both Bob and Laura by giving to them her funds to purchase the land and build a home for their family.

Finding of Fact No. 10: In 2014, Robbie authorized Bob and Laura to use funds from her Security Service Account to purchase the 19.72 acres. Robbie's intent was to give the funds from her account to Bob and Laura to use to purchase the acreage and build a home for both Bob and Laura.

Finding of Fact No. 11: On February 18, 2014, Bob and Laura entered into a contract (Texas Real Estate Commission Farm and Ranch Contract – TREC) with Claude R. Chew to purchase the 19.72 acres of land generally described as 995 CR 339, Jourdanton, Texas.

Finding of Fact No. 12: On May 13, 2014, Claude R. Chew executed a General Warranty Deed conveying the 19.72 acres (more particularly described in that deed) to Bob and Laura.

Finding of Fact No. 13: Robbie gave Bob and Laura the funds to purchase the 19.72 acres from her Security Service Account.

Finding of Fact No. 14: Alternatively, Robbie gave the funds to purchase the 19.72 acres to Bob solely and Bob gifted one-half of the funds and/or the 19.72 acres to Laura.

Finding of Fact No. 15: The 19.72 acres is properly characterized as follows: 50% undivided, separate property interest owned by Bob and 50% undivided, separate property interest owned by Laura.

Finding of Fact No. 16: After Bob and Laura purchased the 19.72 acres using funds gifted to them by Robbie, Robbie then gave Bob and Laura additional funds from her Security Service Account to construct a house on the property. The funds from Robbie's Security Service Account used to construct the house upon the property were given by Robbie to both Bob and Laura. The funds used to construct the house upon the property were not Bob's separate property.

Finding of Fact No. 17: Alternatively, if Robbie gave the funds to construct the house solely to Bob, Bob gifted one-half of the funds to Laura.

Finding of Fact No. 18: Approximately one year after the house was constructed, Bob and Laura spent $95,000 of their community funds to build an in-ground pool and outdoor kitchen as permanent improvements to the property.

### B. Bob's Burden to Prove Security Service Funds Were a Gift

In his brief, Bob concedes that pursuant to section 3.003(b) of the Texas Family Code, he had the burden at trial to prove by clear and convincing evidence that his mother, Robbie, gave him 100% of the funds used to purchase the land as a gift. *See* TEX. FAM. CODE § 3.003(b) (requiring a party to prove property is separate property by clear and convincing evidence); *see also id*. § 3.001(2) (providing that property acquired by a spouse by gift during the marriage is separate property). On appeal, he attacks the trial court's finding that Robbie did not gift him the funds while they were in Robbie's Security Service bank account. Accordingly, he raises legal and factual sufficiency of the evidence issues with regard to a finding on which he had the burden of proof at trial. That is, he complains about the trial court's *failure to find by clear and convincing evidence* that he proved the funds in the Security Service account were a gift from Robbie to him.

When a party attacks the legal sufficiency of *an adverse finding on an issue on which he had the burden of proof*, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Danner v. Danner*, No. 09-18-00385-CV, 2020 WL 6325725, at *5 (Tex. App.—Beaumont Oct. 29, 2020, pet. denied). We consider the evidence "in the light most favorable to the verdict, and indulge every reasonable inference that would support" the finding the appellant has challenged. *Danner*, 2020 WL 6325725, at *5 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). "But if the evidence allows only one inference," we may not disregard the evidence when deciding where legally sufficient evidence supports the finding the appellant has

challenged in his appeal. *Id*. (quoting *City of Keller*, 168 S.W.3d at 822). Thus, as applicable to his legal sufficiency issue, Bob must demonstrate on appeal that the evidence establishes as a matter of law that the funds in the Security Service account were a gift from Robbie to him.

When a party attacks the factual sufficiency of an adverse finding *on an issue on which he had the burden of proof*, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem*, 46 S.W.3d at 241; *Danner*, 2020 WL 6325725, at *6. We consider and weigh all of the evidence, and set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem*, 46 S.W.3d at 241; *Danner*, 2020 WL 6325725, at *6. Thus, with regard to factual sufficiency, Bob must demonstrate on appeal that the trial court's finding that the funds in the Security Service account were not a gift from Robbie to Bob is against the great weight and preponderance of the evidence.

"A gift is a voluntary transfer of property to another made gratuitously and without consideration." *In re Marriage of Moncey*, 404 S.W.3d 701, 710 (Tex. App.—Texarkana 2013, no pet.). "To establish the existence of a gift, the donee must establish (1) the intent to make a gift, (2) the delivery of the property, and (3) its acceptance." *In re Marriage of Noble*, No. 06-16-00032-CV, 2016 WL 6543654, at *9 (Tex. App.—Texarkana Nov. 4, 2016, pet. denied). "The donor's intent is the principal issue in the determination of whether a gift was made." *Id*. The donor must intend "to absolutely and irrevocably divest himself of the title, dominion, and control of the subject of the gift *in praesenti* at the very time he undertakes to make the gift." *Nipp v. Broumley*, 285 S.W.3d 552, 559 (Tex. App.—Waco 2009, no pet.) (quoting *Harmon v. Schmitz*, 39 S.W.2d 587, 589 (Tex. Comm'n App. 1931, judgm't adopted)). "Thus, the requisite donative intent is established by, among other things, evidence that the donor intended an *immediate and unconditional* divestiture of his or her ownership interests and an immediate and unconditional

vesting of such interests in the donee." *Id*. (emphasis in original). "All dominion and control over the property must be released by the owner." *Oadra v. Stegall*, 871 S.W.2d 882, 890 (Tex. App.— Houston [14th Dist.] 1994, no writ). "Until a donor has divested himself, absolutely and irrevocably of the title, dominion, and control of the subject of the gift, he has the power to revoke it." *Id*. "If the donor has the power to revoke, there is no valid gift." *Id*.

Bob argues that the fact Robbie, his mother, placed his name on her bank account creates a presumption that she gifted him the funds in her bank account. For support, he relies on *Bogart v. Somer*, 762 S.W.2d 577 (Tex. 1988), for the proposition that a presumption of gift arises when a parent places property in his child's name. In *Bogart*, a husband and wife "purchased certain real property and placed record title in the name of their son-in-law." *Id*. at 577. After the husband and wife died, their beneficiaries sought title to the real property held in the son-in-law's name. *Id*. The trial court then submitted an issue on lack of donative intent to the jury, charging the jury that a preponderance of the evidence was required to disprove intent. *Id*. The jury found that the husband and wife lacked donative intent, and the trial court rendered that their beneficiaries owned the realty and the son-in-law had merely held the property in constructive trust. *Id*. After the son-in-law appealed the trial court's judgment, the court of appeals "held that a presumption of gift exists when a father- and mother-in-law place property in their son-in-law's name, and the party seeking to disprove the presumption must prove lack of donative intent by clear and convincing evidence." *Id*. On appeal to the Texas Supreme Court, the court "approve[d] the holding of the court of appeals that the burden of proof in refuting the presumption of gift is by clear and convincing evidence." *Id*.

We note that *Bogart* is distinguishable from the facts presented here. *Bogart* "'involve[d] a presumption of a gift of real property to the object of one's bounty,' not a dissolution of a marriage." *In re Campa*, No. 06-21-00007-CV, 2021 WL 2964274, at *3 (Tex. App.—Texarkana

July 15, 2021, pet. denied) (quoting *In re Noble*, No. 06-16-00032-CV, 2016 WL 6543654, at *9 n.14 (Tex. App.—Texarkana Nov. 4, 2016, pet. denied)). "Because this case involves the division of property in a dissolution of a marriage, the provisions of the Texas Family Code apply." *Id*. "[U]nder the Texas Family Code, property held by the spouses during, and at the dissolution of, a marriage is presumed to be community property." *Id*. (citing TEX. FAM. CODE § 3.003(a)). This "rebuttable presumption require[s] a spouse claiming assets as separate property . . . to establish its separate character by clear and convincing evidence." *Id*. (citing TEX. FAM. CODE § 3.003(b)). And, as noted previously, Bob has conceded in this appeal that section 3.003(b) applies to this case and that he had the burden of proof at trial to show by clear and convincing evidence that the funds in the Security Service bank account were gifted to him by Robbie.

Further, the evidence in this case does not support Bob's argument that a presumption of gift should arise as a matter of law. There is disputed evidence in the record regarding whether Robbie intended to gift the funds in her Security Service bank account to Bob. The evidence shows that Robbie opened an account and allowed Bob to be a signatory. However, there is disputed evidence as to whether Bob merely had Robbie's permission to sign as a convenience for her or whether she intended to convey the funds as a gift to Bob. Bob testified he was a "co-owner" of the account, which is admittedly self-serving. Further, Bob did not introduce in evidence the bank documents that opened the account, which would reflect the type of account and Bob's interest in it. Indeed, Bob admitted at trial that he had no documents supporting his contention that he was a "co-owner" of the account in question. Further, there was other evidence that Bob was merely a signatory on the account as a convenience for Robbie. Family friend Barbara Peeler testified she talked to Robbie before Robbie opened the account and advised Robbie to put Bob's name on the account as a protection against Robbie's estranged daughters. There was also testimony that (1) all the funds deposited in the account belonged to Robbie; (2) Bob never contributed any of his

own funds; and (3) Robbie continued to exercise control and dominion over the funds by writing checks to pay for expenses she incurred. *See* TEX. EST. CODE § 113.002 ("During the lifetime of all parties to a joint account, the account belongs to the parties in proportion to the net contributions by each party to the sums on deposit unless there is clear and convincing evidence of a different intent."); *In re Marriage of Case*, 28 S.W.3d 154, 159 (Tex. App.—Texarkana 2000, no pet.) (explaining that Estates Code "has the effect of overriding any common-law gift presumptions on bank accounts").[1] Given this record, we conclude that under the applicable legal sufficiency standard enunciated above, the evidence did not establish as a matter of law that the funds in the Security Service account were a gift from Robbie to Bob.

Additionally, we note that the trial court, as fact finder, has great discretion in determining the weight and credibility to be accorded to the testimony, and in resolving any conflicts in the evidence. *Long v. Long*, 234 S.W.3d 34, 39 (Tex. App.—El Paso 2007, pet. denied). Thus, the trial court was free to not find Bob's testimony credible and to find instead the other evidence credible. In considering all the evidence, we hold Bob has failed to demonstrate on appeal that the trial court's finding the funds in the Security Service account were not a gift from Robbie to Bob is against the great weight and preponderance of the evidence.

### C. Trial Court's Finding That Robbie Gave Bob and Laura the Funds to Purchase the 19.72 Acres and Build the Family Home From Her Security Service Bank Account

On appeal, Bob challenges the trial court's finding that Robbie gave both him and Laura the funds from her Security Service Account to purchase the 19.72 acres. He argues the evidence is legally and factually insufficient to support the finding that Laura was included in Robbie's gift, emphasizing there was no delivery of the gift to Laura. Pursuant to section 3.003(b) of the Texas

---

[1]Bob argues there is no evidence that the account in question was a "joint account." However, it was Bob's *burden* to show what type of account was opened and how he was gifted the funds by being named as a signatory on the account.

Family Code, Laura had the burden at trial to prove by clear and convincing evidence that Robbie made a gift to her by giving her the money from the Security Service account to purchase the 19.72 acres. *See* TEX. FAM. CODE § 3.003(b) (requiring a party to prove property is separate property by clear and convincing evidence); *see also id*. § 3.001(2) (providing that property acquired by a spouse by gift during the marriage is separate property). Thus, unlike above, Bob is challenging a finding *on which he did not have the burden of proof at trial*.

Because Laura had the burden at trial of proving a gift from Robbie by clear and convincing evidence, we apply an elevated sufficiency review. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004). Accordingly, in a legal sufficiency review of the trial court's finding, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. (citation omitted). In doing so, we "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. (citation omitted). "A corollary to this requirement is that [we] should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*. (citation omitted). "If, after conducting [our] legal sufficiency review of the record evidence, [we] determine[] that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then [we] must conclude that the evidence is legally insufficient." *Id*. (citation omitted). In a factual sufficiency review, we "must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing." *Long*, 234 S.W.3d at 39. We consider "whether disputed evidence is such that a reasonable fact finder could not have resolved the dispute in favor of its finding." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not

reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

Bob argues that there "could be no gift from Robbie to Laura without delivery of the funds to Laura." Bob claims that "[d]espite Robbie's ownership of the funds up until the moment when they were withdrawn from the account, a gift from Robbie to [Bob] was completed when [Bob] withdrew funds from the account and when Robbie wrote a check for construction expenses." According to Bob, when he "removed funds from the [Security Service] account with Robbie's consent to buy the property, delivery of the gift to [Bob] was completed." Thus, Bob is pointing to a particular moment when he argues the funds were gifted to him at Laura's exclusion. However, as noted above, there was evidence Bob was a signatory on the Security Service account as a convenience for Robbie and not a co-owner of the funds. Additionally, the evidence at trial regarding Robbie's intent was disputed. Bob claims Robbie intended only to gift him the funds to purchase the 19.72 acres, pointing to his own testimony. However, there was other evidence presented at trial that Robbie's intent was to give a gift to both Bob *and* Laura.

There was evidence at trial that after Bob and Laura had been married for fifteen years, Robbie, who had health issues and had been hospitalized, came to live with Bob and Laura. There was testimony Robbie needed help with her daily needs, and both Bob and Laura helped her. Since Bob was regularly absent because of his job, Laura took on the role of caring for Robbie by taking her to medical appointments, preparing meals for her, and helping her around the home. It is undisputed that Robbie inherited $500,000 in life insurance proceeds and was estranged from her daughters. As noted previously, Barbara Peeler had a discussion with Robbie about setting up a bank account to deposit proceeds and advised her to put Bob's name on the account to protect the funds from her estranged daughters. It is also undisputed that neither Bob nor Laura ever deposited any funds into the Security Service account. All the additional funds deposited were Robbie's

contributions. Further, as noted previously, Robbie continued to exercise control and dominion over the funds by writing checks for her expenses.

There was also evidence at trial that while Robbie lived with Bob and Laura, the family had many discussions about buying property and building a family home. Laura testified she and Bob were talking about getting a loan when Robbie "said she would give [Laura and Bob] the money" for the property, so long as the plans included a separate living quarters for her. Laura testified that she, Robbie, and Bob had several conversations about Robbie giving both her and Bob the money to purchase the land and build the family home. Barbara Peeler also testified that "at some point, [Robbie] mentioned to [Peeler] that [Robbie] was go[ing] to help [Bob and Laura] with their house." Bob and Laura then entered into a contract to purchase the 19.72 acres.

The farm and ranch contract for the 19.72 acres named both Bob and Laura as buyers of the property. The cash warranty deed named both Bob and Laura as owners of the 19.72 acres. In his brief, Bob argues that Laura was the one who filled out the farm and ranch contract, but admitted that he did not object to her name being listed on the contract or subsequent deed. Laura testified that if Robbie had intended to only give Bob the funds to purchase the land, Laura would never have agreed to build the family home on the land, stating that she had been "quite happy getting a mortgage." Indeed, Bob admitted at trial that he never told Laura, "By the way, the house that we're building on our property, you will never own that. That's all mine." Additionally, it was undisputed that the appraisal district listed the property and home in both Bob's and Laura's names. There was also evidence that after the family home was constructed, $95,000 of community funds were used to build a pool, an outdoor kitchen, and other permanent improvements on the property, which is consistent with Laura's testimony that she would never have agreed unless Robbie was giving both her and Bob the funds to purchase the land and build the family home.

As noted, Bob argues that there is no evidence of delivery of any gift to Laura, claiming that Robbie had to give the funds directly to Laura before the purchase of the land and construction of the home. We disagree with this analysis. There was evidence that Robbie's intent was to give the funds necessary to purchase the land and construct the home to *both* Bob and Laura. That Bob was able to sign many of the checks at issue because of Robbie's consent does not mean that the gift of the funds was not delivered to Laura. When the funds were used to purchase the land at closing and the closing documents named both Bob and Laura, Robbie's gift was delivered to Laura. Similarly, when Robbie's funds were used to construct the family home, Robbie's gift was delivered to Laura.

Again, we emphasize that the trial court as fact finder had great discretion in determining the weight and credibility to be given to the testimony. *See Long*, 234 S.W.3d at 39. With regard to legal sufficiency, in looking at the evidence in the light most favorable to the trial court's finding that Robbie gave Bob and Laura the funds used to purchase the 19.72 acres and build the family home, we conclude the trial court could have formed a firm belief or conviction that its finding was true. *See Sw. Bell Tel. Co.*, 164 S.W.3d at 627. With regard to factual sufficiency, we conclude the disputed evidence is such that a reasonable fact finder could have resolved the dispute in favor of its finding and could have reasonably formed a firm belief or conviction that its finding was true. *See Long*, 234 S.W.3d at 39. Therefore, we also hold the evidence is factually sufficient to support the trial court's finding.[2]

---

[2]We note that Bob complains of "conflicting findings" by the trial court, which he argues cancel one another and are "fatal to Laura's case." In particular, Bob argues the trial court's findings that (1) Robbie gifted the funds to the couple or, in the alternative, (2) gifted the funds to Bob, who then gifted half of the funds to Laura, are in irrevocable conflict. We agree with Laura that Bob mistakes alternative findings, which are proper, for conflicting findings, which are not. *See Mansfield v. Mansfield*, No. 04-18-00551-CV, 2019 WL 6138984, at *3 n.7 (Tex. App.—San Antonio 2019, pet. denied). Either theory of gift from Robbie would support the trial court's finding that the 19.72 acres and family home is owned by Bob and Laura as separate property. *See id.*; *see also Statewide Hydraulics, Inc. v. EZ Mgmt. GP, LLC*, No. 14-13-01049-CV, 2015 WL 167160, at *8 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("An erroneous

Furthermore, having found legally and factually sufficient evidence to support the trial court's finding that Robbie gave Bob and Laura the funds to purchase the 19.72 acres of land and build the family home, we hold the trial court correctly concluded that the 19.72 acres is properly characterized as a 50% undivided, separate property interest owned by Bob and a 50% undivided, separate property interest owned by Laura. *See* TEX. CONST. art. XVI, § 15 ("All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired *afterward by gift*, devise or descent, shall be the separate property of that spouse . . . .") (emphasis added); TEX. FAM. CODE 3.002 ("Community property consists of the property, *other than separate property*, acquired by either spouse during marriage."); *see also Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.) ("Separate property includes property . . . acquired by a spouse during marriage by gift, devise, or descent."); *see also Blair v. Blair*, 642 S.W.3d 150, 156-57 (Tex. App.—El Paso 2021, no pet.) (explaining that improvements made to a spouse's separate property during marriage, including the construction of a residence, are considered the spouse's separate property).

### CONCLUSION

We conclude the trial court did not divest Bob of his separate property interest. Therefore, we affirm the trial court's final decree of divorce.

Liza A. Rodriguez, Justice

---

finding of fact or conclusion of law does not require that a judgment be reserved if alternative findings of fact and conclusions of law provide a valid basis for judgment.").